UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC# _____
DATE FILED: _____6/19/12_____

SPENCER D. DREIER,

      Plaintiff,

        v.

BEN CLORITE,

      Defendant.

-------------------------------------------------------x

09 Civ.7553 (JGK) (MHD)

## PLAINTIFF'S PROPOSED JURY INSTRUCTIONS

SPENCER DREIER

Plaintiff Pro Se
425 East 58th Street
New York, NY 10022
(917) 841-9571

June 18, 2012

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

SPENCER D. DREIER,

        Plaintiff,

    v.

BEN CLORITE,

        Defendant.

-------------------------------------------------------x

09 Civ. 7553 (JGK)

**PLAINTIFF'S PROPOSED JURY INSTRUCTION  # 1**

**PLAINTIFF'S CLAIM FOR LIBEL**

        Each of the two parties here has sued the other for libel.   I will first instruct you regarding the libel claim of the Plaintiff, Spencer Dreier.

        Mr. Dreier claims that the Defendant, Mr. Clorite, libeled him in a statement that Mr. Clorite posted on the internet on the evening of January 27, 2009, at a time when the parties were college roommates.  The statement was posted specifically on The Wall Street Journal Law Blog, which several days earlier had posted an article entitled "No Bailout for Marc Dreier, Argue Feds."  The article reported on the bail proceeding regarding Mr. Dreier's father, Marc Dreier, an attorney who had been arrested in December 2008 on charges of securities fraud and money laundering as part of a large Ponzi scheme.

        Mr. Clorite does not deny that he posted the statement at issue.  The statement was as follows:

"I have had the pleasure of living with Marc Dreier's 19-year old son since September, and I would hard fought to find a more disillusioned family with a skewed view on reality.  I have personally heard his son performing acts that are illegal and direct obstructions to the case on his father.  It is honestly people like this who have brought down this country.  It would be an insult to each and every hard working American if Marc Dreier were not imprisoned for life.  And yes he will flee if he is given bail.  Never in my life could I imagine any greater magnitude of self-entitlement and ignorance than I have seen in Marc and Spencer Dreier.  Fortunately for the country Spencer Dreier holds the same terrible attributes as his father with one third of the intelligence and common sense."

Mr. Dreier focuses his libel claim on the second sentence in that statement, that Mr. Clorite had "personally heard" Mr. Dreier "performing acts that are illegal and direct obstructions to the case on his father."

An individual asserting a claim for libel must prove 5 different elements, which I will describe to you, in order to prevail on the claim.  Mr. Dreier must prove each of the five elements by a fair preponderance of the credible evidence.  That means you must find, based on all the evidence you consider believable, that it is more likely than not that each of the 5 elements is true.  You need not be certain, but you must conclude, based on all the evidence you see and hear, that there is more than a 50% likelihood that it is so.  A preponderance of the evidence does not mean the greater number of witnesses, or the greater number of documents or the greater length of time spent on an issue.  It refers to the greater part of the evidence that you found to be credible and persuasive.

The first element that Mr. Dreier must prove is that Mr. Clorite's statement was a defamatory statement of fact concerning Mr. Derier.  Secondly, he must prove that the statement was published in writing to a third party.  Third, he must prove that the

statement was false.  Fourth, he must prove that Mr. Clorite was grossly irresponsible in making the statement.  Finally, he must prove either that he incurred what are called "special damages" as a direct result of the statement or that the statement was defamatory per se, which means that it was defamatory on its face.  I will address each of these 5 elements with you one at a time.

The first element, requiring that the statement be defamatory, means that the statement had to have a tendency to expose Mr. Dreier to public hatred, contempt, ridicule or disgrace.   And it had to be a statement of fact about Mr. Dreier rather than merely an opinion.  Based on the evidence, I find that there is no genuine dispute of fact in this regard. Mr. Clorite's statement, at least the second sentence of that statement, which asserts that Mr. Dreier was performing illegal acts and obstructions to his father's case, was a derogatory statement about Mr. Dreier.  And it purported to be a statement of fact. Therefore, I instruct you to find that Mr. Dreier has satisfied this first element of his libel claim.

The second requirement is that Mr. Dreier must prove that the statement was published to a third party.  Here it is undisputed that Mr. Clorite posted his statement on the internet on a Wall Street Journal blog site.   There is no genuine dispute, therefore, that the statement was published to one or more third parties.  Accordingly, I instruct you to find that Mr. Dreier has satisfied this second element of his libel claim.

The third requirement is that the statement must be false.  Here again, Mr. Dreier focuses on the second sentence of Mr. Clorite's statement, and there are 2 components to that sentence.  Mr. Clorite stated in that sentence that Mr. Dreier was performing illegal acts and direct obstructions to his father's case.  He further stated in that sentence that he personally heard Mr. Dreier performing these illegal acts and obstructions.  If Mr. Dreier has proven to you, by a preponderance of the evidence, that he did not perform illegal acts and obstructions, or if Mr. Dreier has proven to you, by a preponderance of the evidence, that, in any event, Mr. Clorite did not hear him perform illegal acts and obstructions, then Mr. Dreier has satisfied this element of his claim requiring that he prove the falsity of Mr. Clorite's statement.  On the other hand, if you find that he has not proven to you, by a preponderance of the evidence, that Mr. Clorite did not overhear him engaging in illegal acts and obstructions of his father's case, then he has not proven to you that Mr. Clorite's statement was false and you must find against Mr. Dreier on his claim for libel.

There are 4 acts that Mr. Clorite has attributed to Mr. Dreier as the basis for his statement that he heard Mr. Dreier performing illegal acts and obstructions of his father's case.  He says that Mr. Dreier attempted to arrange for someone to retrieve some computers from his father's law office.  He says that Mr. Dreier attempted to arrange for someone to keep his father's yacht out of U.S. waters.  He says that Mr. Dreier attempted to have someone destroy or discard some SIM cards associated with cellphones belonging to his father.  He says that Mr. Dreier attempted to have someone assist him in transferring ownership to himself of certain properties in the Hamptons owned at the time by his father.

Mr. Dreier denies that he did any of this.  He says that after his father was arrested he had some conversations about his father's yacht, his father's cellphones and his father's property in the Hamptons, and that he had a conversation about his own computer that was being repaired in his father's office, but he maintains that these conversations were nothing like Mr. Clorite says they were and that he did nothing illegal in these conversations.  You must determine, as best you can, what you believe Mr. Dreier said in his conversations, and you must decide, by a preponderance of the evidence, whether you believe that Mr. Dreier engaged in illegal acts and obstructions of his father's case in his conversations.

In this regard, I instruct you that obstruction of justice occurs when a person corruptly or by threat of force or by any threatening communication influences, obstructs or impedes, or endeavors to influence, obstruct or impede, the due administration of justice.  This does not mean that the person must have succeeded in obstructing justice, but it does mean that the person must have taken action with a specific intent to influence, obstruct or interfere with a judicial proceeding, and his endeavor must have had the natural and probable effect of interfering with the due administration of justice in that proceeding.  A person lacking knowledge that his actions are likely to affect a pending proceeding lacks the requisite intent to obstruct.

Mr. Dreier contends that he had no conversation in which he intended to interfere with the administration of justice, in which he said anything that did interfere with the

administration of justice, or in which he said anything that could have had the natural and probable effect of doing so.  Mr. Clorite contends that Mr. Dreier did have conversations which constituted obstructions of justice.

If, based on the foregoing, you find by a preponderance of the evidence that Mr. Dreier did not engage in illegal acts and obstructions on his father's case, then you must find that Mr. Clorite's statement was false.  If, on the other hand, you find that Mr. Dreier has failed to prove by a preponderance of the evidence that he did not engage in illegal acts and obstructions of his father's case, then you must determine whether or not Mr. Clorite actually heard Mr. Dreier engaging in those illegal acts and obstructions.

In this regard, Mr. Clorite says that he heard Mr. Dreier engage in these illegal acts and obstructions in January 2009, while Mr. Dreier was speaking on his cellphone in their dormitory room.  Mr. Dreier denies that Mr. Clorite heard any such conversations.   He contends that Mr. Clorite simply lied about that out of ill will toward Mr. Dreier and to retaliate against Mr. Dreier for a physical altercation they had earlier that day.  He contends that Mr. Clorite merely invented the story that he heard such conversations based on things Mr. Clorite read in the newspaper about Mr. Dreier and his father's bail proceeding.  Mr. Dreier maintains that whatever conversations he had regarding any of his father's properties or belongings were not only proper but occurred in December 2008, shortly after his father's arrest and while Mr. Dreier was still at home here in Manhattan on winter break from college.  According to Mr. Dreier, no such conversations occurred after he had returned to school in January 2009, and therefore Mr. Clorite could not possibly have heard

such conversations.  He says further that anytime he spoke about his father or his father's case after he returned to school in January, he did so in private.

In determining whether Mr. Clorite overheard any such conversations, you will have to decide whether Mr. Dreier's testimony or Mr. Clorite's testimony is more credible.  In doing so, you should consider whatever other credible evidence you believe bears on the facts.   And you should use your common sense to evaluate whose version makes more sense.

In determining whether Mr. Clorite's statement was true, you are instructed that an allegedly libelous statement need not be absolutely true for the defendant to avoid liability. It is enough that the statement is "substantially true." If you determine that Mr. Clorite did overhear Mr. Dreier engage in illegal acts and obstructions of his father's case, then his statement is substantially true, and you must find in favor of Mr. Clorite on this claim. However, if you find, by a preponderance of the evidence, that Mr. Clorite did not overhear the conversations he says he overheard, then his statement on the internet cannot be substantially true, and I instruct you to find that Mr. Dreier has satisfied the requirement that he prove falsity.   Likewise, if you find, by a preponderance of the evidence, that Mr. Clorite did hear conversations along the lines he has testified to but that Mr. Dreier did not engage in illegal acts or obstructions of his father's case in those conversations, based on the definition of obstruction I gave to you, then, again, Mr. Clorite's statement cannot be substantially true, and I instruct you to find that Mr. Dreier has satisfied the requirement that he prove falsity.

In the event, based on the foregoing, you find that Mr. Dreier has proven to you the falsity of Mr. Clorite's statement on the internet by a preponderance of the evidence, then you must move on to the fourth element necessary to prevail in a libel claim, which is that the defendant acted with sufficient fault in publishing the false statement. In the circumstances of this case, where the statement related to a matter of some public concern, which was the bail proceeding of Mr. Dreier's father, Mr. Dreier must show, by a preponderance of the evidence, that Mr. Clorite was grossly irresponsible in publishing the statement about Mr. Dreier. This means that he did so without consideration for the standards of information gathering and dissemination followed by responsible parties. It means that he acted with more recklessness than just ordinary negligence.

Mr. Clorite maintains that he did not act in a grossly irresponsible manner, because he heard Mr. Dreier's conversations and reasonably concluded that Mr. Dreier was engaging in illegal acts and obstructions of the criminal proceeding involving his father. Mr. Dreier maintains, on the other hand, that Mr. Clorite was grossly irresponsible, because, according to Mr. Dreier, Mr. Clorite simply invented his story that he had heard these conversations. If you find that Mr. Clorite did simply lie about this and that he was not present during such phone calls, then there can be no doubt that he was grossly irresponsible in publishing his statement that he overheard such conversations. In that case, I direct you to find that Mr. Dreier has satisfied this element of his libel claim regarding Mr. Clorite's degree of fault.

If, however, you find that Mr. Clorite was present during phone conversations when Mr. Dreier discussed various items belonging to his father, but you still determine that Mr. Dreier did not engage in illegal acts or obstructions in those conversations, then you must determine whether Mr. Clorite was grossly irresponsible in stating on the internet that those conversations were illegal acts and obstructions. Mr. Clorite maintains that it was reasonable for him to say so based on what he heard. Mr. Dreier maintains that even if Mr. Clorite heard Mr. Dreier discussing these subjects, which Mr. Dreier denies, he still said nothing in those conversations which was an obstruction of his father's case or was otherwise illegal and that it was therefore grossly irresponsible for Mr. Clorite to publish his statement without taking additional measures to determine whether what Mr. Dreier said was in fact illegal and an obstruction.

You will have to determine whether Mr. Clorite was grossly irresponsible in posting his statement based on what Mr. Clorite actually heard Mr. Dreier say. If he was not, then Mr. Dreier cannot prevail on his claim, and you must find for the Defendant. If, however, you find, by a preponderance of the evidence, that Mr. Clorite was grossly irresponsible in posting his statement, either because he invented his story that he heard such conversations, or because he stated, based on conversations he did hear, that Mr. Dreier had engaged in illegal acts and obstructions without consideration for the standards of information gathering and dissemination that a responsible person would follow, then I instruct you to find that Mr. Dreier has satisfied this element of his libel claim, and you are to proceed to consider the next element.

As I stated earlier, the fifth and final element of the claim is proving either that the plaintiff incurred special damages as a direct result of the defamatory statement or that the statement was defamatory on its face.  Mr. Clorite's statement was that he heard Mr. Dreier personally engaging in illegal acts.  That sort of statement is necessarily defamatory on its face.  Therefore, I instruct you to find that Mr. Dreier has satisfied this last requirement of his libel claim if you find that he has satisfied the others.

After considering all of the foregoing, if you find that Mr. Dreier has proven to you, by a preponderance of the evidence, each of the 5 elements of liability for a libel claim, then Mr. Clorite has liability on this claim, and you must go on to determine Mr. Dreier's damages.  I am now going to instruct you on the law of damages in libel cases.

First, you must determine whether Mr. Dreier in fact suffered any injury as a direct result of Mr. Clorite's libel and then, if so, the proper amount of damages to award him as compensation.  In some cases the plaintiff must prove that he suffered injury; in other cases it may be presumed.  In a case such as this, a compensable injury may be presumed, because the statement was defamatory on its face.  It stated that the plaintiff had engaged in illegal activity, and such statements, when false, are presumptively harmful.  Accordingly, I instruct you that if you have found the statement to be false, you must assume that Mr. Dreier suffered some compensable injury.

You must then determine the amount of damages you will award him as compensation for the injury.  The sort of harm you may consider in assessing his damages,

include damage he has suffered to his reputation and standing in his community, as well as personal humiliation and mental anguish. If you find that Mr. Dreier's reputation will likely be damaged in the future as a result of Mr. Clorite's statement, or that Mr. Dreier will suffer humiliation or mental anguish in the future as a result of the statement, you will award such additional amount as will compensate Mr. Dreier for such harm going forward. You may also consider any monetary loss that has directly resulted from the defamation. Mr. Dreier points to costs associated with his transferring to another college. You may consider such costs in assessing his damages if you conclude that they were directly brought about by the Defendant's defamatory statement.

The total amount of compensatory damages, if any, need not be proven with mathematical certainty. You need only determine an amount that, in the exercise of your good judgment and common sense, you find is fair and just compensation for his injury. Fair and just compensation may vary in cases, ranging from a small amount or even nominal amount if you decide that there was no significant injury, to a larger amount if you decide that the injury has been and will be substantial. In giving you this instruction, I do not make any implication as to the appropriate amount of damages. You are to decide that in the exercise of your good judgment. However, I do instruct you that in determining the amount of damages, you are to take into account only the harm to Mr. Dreier resulting from the defamation. You are not to consider the financial wherewithal of the Defendant or his apparent ability to pay or his age or any other personal circumstance of the Defendant.

The damages I have discussed with you so far are called compensatory damages, because they are intended to compensate a plaintiff for his injuries resulting from the defendant's defamatory statement. In adddition, Mr. Dreier has requested an award of punitive damages. Punitive damages in a claim for libel are intended to discourage a defendant from repeating his conduct or to discourage others from engaging in similar conduct. However, you may award punitive damages only if you find, by a preponderance of the evidence, that the Defendant has acted with malice.

A defendant in a libel claims acts with malice if he made his statement with the deliberate intent to harm the plaintiff, or if he was motivated to make the statement out of hatred or ill will or spite towards the defendant, or if he made the statement with wilful, wanton or reckless disregard of the plaintiff's rights. In determining whether a defendant has acted with malice, you may consider the relationship between the parties, including any rivalry or history of altercations. You may also consider the language and context of the defendant's statement. While the falsity of the statement is not sufficient by itself to support an inference of malice, such an inference may be justified by abusive, intemperate or vituperative language in the statement.

Mr. Dreier contends that Mr. Clorite did make his statement with malice, that he was motivated to make the statement out of ill will for Mr. Dreier that had developed over a period of months and, more particularly, out of spite and in retaliation for an altercation they had earlier that day. Mr. Clorite denies that.

If you do not find, by a preponderance of the evidence, that Mr. Clorite acted with malice in making his statement, as I have just defined that term for you, you may not award punitive damages to Mr. Dreier on his libel claim.  If you find, by a preponderance of the evidence, that Mr. Clorite did act with malice, you may, but are not required to, award punitive damages.  You should consider the following factors in determining whether to do so and, if so, the appropriate amount of punitive damages:

1. The nature and reprehensibility of Mr. Clorite's conduct.  That would include the character of the wrongdoing and his awareness of the harm to Mr. Dreier that was likely to result.  You should weigh this factor heavily.

2. The actual harm and potential harm to Mr. Dreier as a result of Mr. Clorite's conduct.  The amount of punitive damages that you award must be reasonable in relation to the actual and potential harm.

3. The need and the amount needed to discourage Mr. Clorite from repeating such conduct and to discourage others from engaging in similar conduct.

4. Mr. Clorite's financial condition and the impact the punitive damages will have on him.  While you cannot consider Mr. Clorite's financial condition in determining the amount of compensatory damages to which Mr. Dreier may be entitled, this can be a factor in your determining the amount of punitive damages, if any, that you award.

I have now completed my instruction to you on the Plaintiff's claim for libel.  I am going to provide you with a written Verdict Form for this claim.  It will require that you answer a series of questions relating to the instructions I just gave you, and you will decide this claim by answering those questions.

**Authorities for Jury Instruction #1**

1. Elements of the Claim:

   Meloff v. New York Life Ins. Co., 240 F.3d 138, 145 (2d Cir. 2001); Celle v. Filipino Reporters Enterprises, Inc., 209 F.3d 163, 176 (2d Cir. 2000).

2. Statement of Fact rather than Opinion/ Issue of Law for Court to Determine

   Gross v. New York Timies, 623 N.E.2d 1163, 1167 (NY 1993); Rinaldi v. Holt, Rinehart & Winston, 42 N.Y.2d 369, 366 N.E.2d 1299, 1306, 397 N.Y.S.2d 943 (1977), Celle v. Filipino Reporter Enterprises, 209 F.3d 163 (2000); Jewell v. NYP Holdings, Inc., 23 F. Supp. 2d 348, 377 (S.D.N.Y. 1998);  Levin v. McPhee, 119 F.3d 189, 197 (2d Cir. 1997); Sweeney v. Prisoners' Legal Services of New York, Inc., 146 A.D.2d 1, 538 N.Y.S.2d 370 (3d Dep't 1989) (accusation of illegal conduct); Old Dominion Branch No. 496 v. Austin, 418 US 264, 94 S.Ct. 2770; Mann v. Abel, 10 NY 2d 271, 856 NYS 2d 31, 885 NE 2d 884.

3. Fault/Matters of Public Concern/Acting in Grossly Irresponsible Manner:

   Chapadeau v. Utica Observer Dispatch, 341 N.E.2d 569, 571 (NY 1975); Med-Sales Associates, Inc., v. Lebhar-Friedman, Inc., 663 F.Supp. 908, 912 (S.D.N.Y. 1987); Chaiken v. VV Publishing Corp., 907 F. Supp. 689, 697 (S.D.N.Y. 1995); Dalbec v. Gentlemen's Companion, Inc., 828 F.2d 921, 924-25 (2d Cir. 1987).

4. Falsity/Substantial Truth:

   Meloff v. New York Life Insurance Co., 240 F.3d 138, 146 (2d Cir. 2001);  Printers II, Inc. v. Professionals Publishing, Inc., 784 F.2d 141, 146 (2d Cir. 1986); Boehner v. Heise, 734 F. Supp. 2d 389, 399 (S.D.N.Y. 2010); Guccione v. Hustler Magazine, Inc., 800 F.2d 298, 301 (2d Cir. 1986); cert denied, 479 US 1091 (1987).

5. Libel Per Se/ Written Statement Charging Someone with Crime:

   Meloff v. New York Life Insurance Co., 240 F.3d 138, 145 (2d Cir. 2001); Zeevi v. Union Bank of Switz., 1993 U.S. Dist. LEXIS 5760, No. 89 Civ. 4637, 1993 WL 148871 at 4 (S.D.N.Y. 1993).

6. Obstruction of Justice/Specific Intent/Natural and Probable Effect:

   18 U.S.C. sec. 1503; United States v. Aguilar, 515 US 593, 601-02, 115 S.Ct. 2357, 132 L.Ed. 2d 520 (1995); United States v. Sun Myung Moon, 718 F.2d 1210 (2d Cir. 1983), cert denied, 466 US 971 (1984); United States v. Schwarz (2d Cir. 2002); United States v. Wood, 6 F.3d 692, 696 (10th Cir. 1993); United States v. Walasek, 527 F.2d 676, 679 and n.12 (3d

Cir. 1975); United States v. Thomas, 916 F.2d 647, 651 (11th Cir. 1990); United States v. Ryan, 455 F.2d 278 (9th Cir. 1971).

7. Libel Per Se/ No Need for Special Damages:

Davis v. Ross, 754 F.2d 80, 82 (2d Cir. 1985); Celle v. Filipino Reporter Enterprises, 209 F.3d 163, 178 (2d Cir. 2000)

8. Libel Per Se / Compensable Injury Presumed:

Meloff v. New York Life Ins. Co., 240 F.3d 138, 145 (2d Cir. 2001); Celle v. Filipino Reporter Enterprises, 209 F.3d 163, 178 (2d Cir. 2000); Weldy v. Piedmont Airlines, Inc., 985 F.2d 57, 61-62 (2d Cir. 1993);  Liberman v. Gelstein, 80 N.Y. 2d 429, 605 N.E.2d 344, 347-48, 590 N.Y.S.2d 857 (NY 1992); Carey v. Piphus, 435 U.S. 247, 262, 55 L.Ed.2d 252, 98 S.Ct. 1042 (1978); Van-Go Transport, Inc. v. New York City Bd of Educ., 971 F.Sjupp. 90, 100 (EDNY 1997); Matherson v. Marchello, 100 A.D.2d 233, 473 NYS 2d 998, 1002 (2nd Dep't 1984).

9. Presumed Damages/ Definition:

Conboy v. AT&T Corp., 241 F.3d 242 n.6 (2d Cir. 2001); Memphis Cnty School Dist. v. Stachura, 477 U.S. 299, 310-11, 91 L.Ed. 2d 249, 106 S.Ct. 2537 (1986).

10.  Types of General Damages That May Be Considered:

Bishop v. New York Times, Co., 233 NY 446, 135 NE 845; Brancaleone v. Mesagna, 290 AD 2d 467, 736 NYS 2d 685; Dazzo V. Meyers, 83 AD2d 14, 443 NYS 2d 245; Restatement, Second, Torts section 623.

11. Future Harm to Reputation May be Considered in General Damages:

Restatement, Torts, section 621 Comment d; Faulk v Aware, Inc., 35 Misc 2d 315, 231 NYS 2d 270, rev'd on other grounds, 19 AD 2d 464, 244 NYS 2d 259, aff'd, 14 NY 2d 899, 252 NYS 2d 95, 200 NE 2d 778.

12. Libel Per Se/ Entitlement to Nominal Damages:

Celle v. Filipino Reporter Enterprises, 209 F.3d 163, 178 (2d Cir. 2000);  Van-Go Transport Co., Inc. v. New York City Bd. of Educ., 971 F.Supp. 90, 100 (E.D.N.Y. 1997); Buckley v. Littell, 539 F.2d 882, 897 (2d Cir. 1976).

13.  Requirements for Punitive Damages:

Celle v. Filipino Reporter Enterprises, 209 F.3d 163, 184 (2d Cir. 2000); Prozeralik v. Capital Cities. Communications, 82 N.Y.2d 466, 626 N.E,.2d 34, 41-42, 605 N.Y.S.2d 218 (NY 1993); Di Bella v. Hopkins, 403 F.3d 102, 122 (2d Cir. 2004).

14.  Malice/Evidenced by Vituperative Language:

Ashcroft v. Hammond, 197 NY 488, 90 NE 1117, Rabushka v. Marks, 229 AD 2d 899, 646 NYS 2d 392; Moyle v. Franz, 267 App Div 423, 46 NYS 2d 667, aff'd, 293 NY 842, 59 NE 2d 437; Misek-Falkoff v. Keller, 153 AD 2d 841; 545 NYS 2d 360; Mercedes -Benz of North America, Inc.v.Finbrerg, 58 AD 2d 808, 396 NYS 2d 260.

15.  Malice/ Relevance of All Circumstances, Including History and Rivalry Between the Parties:

Herbert v. Lando, 441 US 153, 164 n.12, 99 S.Ct. 1635; Celle v. Filipino Reporter Enterprises, 209 F.3d 163, 184-85

16. Punitive Damages/ Preponderance of Evidence Standard:

Corrigan v.l Bobbs-Merrill Co., 228 NY 58, 126 NE 260; Greenbaum v/ Svenska Handelsbanken, 979 F. Supp. 973 (S.D.N.Y.).

17. Punitive Damages/ Amount of Award/Factors to be Considered:

BMW of North American, Inc. v. Gore, 517 US 559, 116 S.Ct. 1589

**Special Verdict Form For Plaintiff's Libel Claim**

As to each question, at least ___ jurors must agree on the answer.

1. Was the Defendant's statement on the internet defamatory?
   You are instructed to answer Yes.

   Yes ___

   [Signatures]


2. Did the Defendant's statement refer to the Plaintiff?
   You are instructed to answer Yes.

   Yes ___

   [Signatures]


3. Was the statement a statement of fact?
   You are instructed to answer Yes.

   Yes ___

   [Signatures]


4. Did the Defendant publish the statement?
   You are instructed to answer Yes.

   Yes ___

   [Signatures]


5. Did the Plaintiff enage in illegal acts and obstructions of justice?

   Yes ___                    No ___

   [Signatures]              [Signatures]


6. Did the Defendant overhear the Plaintiff engage in illegal acts and obstructions of justice?

Yes ___                              No ___

[Signatures]                         [Signatures]


7.   Was the Defendant's statement false?
     If your answer to Question # 5 was No, you must answer Yes to this Question #7.
     If your answer to Question # 6 was No, you must answer Yes to this Question#7.
     If your answer to Question # 5 and Question # 6 was Yes, you must answer No to this
Question #7.

     Yes ___                         No ___

     [Signatures]                    [Signatures]

     If your answer is No, you should proceed to Question #10.  You must then answer No to
Question #10 and proceed no further with this Verdict Form.

     If your answer is Yes, proceed to question #8.


8.  Did the Defendant publish the statement in a grossly irresponsible manner, without
consideration for the standards
     of information gathering and dissemination followed by responsible parties?

     Yes ___                         No ___

     [Signatures]                    [Signatures]

     If your answer is No, you should proceed to Question #10.  You must then answer No to
Question #10 and proceed no further with this Verdict Form.

     If your answer is Yes, proceed to Question #9.


9.  Was the statement defamatory on its face?
     You are instructed to answer Yes.

     Yes ___

     [Signatures]


10.   Do you find for the Plaintiff on his claim for libel?

If you have answered Yes to Question #7 and Yes to Question #8, you must answer Yes to this Question #10 and then proceed to Question #11.

If you have answered No to Question #7 or to Question #8, you must answer No to this Question #10 and proceed no further with this Verdict Form.

11.   State the amount of compensatory damages you award to the Plaintiff.

Amount  $_____

[Signatures]

12.   Did the Defendant publish his statement out of deliberate intent to harm the Plaintiff, or out of hatred, ill will or spite, or with wilful, wanton or reckless disregard of Plaintiff's rights?

Yes ___                          No ___

[Signatures]                     [Signatures]

If your answer is No, you should proceed no further.
If your answer is Yes, proceed to Question #13.

13.   Do you award the Plaintiff punitive damages against the Defendant?

Yes ___                          No ___

[Signatures]                     [Signatures]

If your answer is No, you should proceed no further.
If your answer is Yes, proceed to Question #14.

14.   State the amount of punitive damages you award to the Plaintiff.

Amount $ _____

[Signatures]

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

SPENCER D. DREIER,

   Plaintiff,          09 Civ. 7553 (JGK)

  v.

BEN CLORITE,    **PLAINTIFF'S PROPOSED JURY INSTRUCTION #2**
              **DEFENDANT'S COUNTERCLAIMS**
               **FOR LIBEL AND SLANDER**

   Defendant.

-------------------------------------------------------x

   Now I will instruct you on the Defendant's counterclaim for libel, as well as his

counterclaim for slander.  Some of these instructions will be the same or similar to the

instructions I gave you regarding Plaintiff's claim for libel.


   The Defendant, Mr. Clorite, claims that the Plaintiff, Mr. Dreier, libeled him in a

document that Mr. Dreier submitted to the Union College Administrative Hearing Panel in

connection with the Panel's consideration of conduct charges that Mr. Clorite and Mr.

Dreier had brought against each other.


   In particular, Mr. Clorite claims there were four defamatory statements in Mr.

Dreier's submission.  He claims that Mr. Dreier falsely stated that Mr. Clorite had punched

him.  He claims that Mr. Dreier falsely stated that Mr. Clorite had told Mr. Dreier he would

make Mr. Dreier's life "a living hell."  He claims that Mr. Dreier falsely stated that Mr. Clorite

had threatened another Union student that he would make her life "a living hell" if she

supported Mr. Dreier's charges against Mr. Clorite.  Lastly, he claims that Mr. Dreier falsely

stated that Mr. Clorite had presented false information to a Union College official.   Mr.

Clorite claims that Mr. Dreier then repeated these statements orally at the Administrative

Panel hearing.

In order for Mr. Clorite to prevail on his counterclaim for libel he must prove the

following: first, that Mr. Dreier made a defamatory statement of fact regarding Mr. Clorite;

second, that Mr. Dreier published the statement in writing to a third party; third, that the

statement was false; fourth, that Mr. Dreier acted with the requisite degree of fault in

making the statement, and finally, that the statement was libelous on its face or that Mr.

Clorite incurred "special damages" as a direct result of damage to his reputation from the

statement.   You must examine each of the four statements that Mr. Clorite attributes to Mr.

Dreier to determine as to each whether Mr. Clorite has satisfied all five of these     elements

by a preponderance of the evidence.

These same five elements apply to Mr. Clorite's counterclaim for slander, except that

in order for Mr. Clorite to prevail on his counterclaim for slander, you must find, by a

preponderance of the evidence, that Mr. Dreier made the statement orally.   The

requirement of a writing does not apply.

I shall review these elements with you one at a time.

First, as I instructed you regarding Mr. Dreier's claim for libel, a statement is

defamatory if it exposes an individual to public hatred, shame, contempt, ridicule, aversion,

ostracism, degradation or disgrace, or if it induces an evil opinion of that individual in the minds of right-thinking persons and deprives the individual of confidence and friendly relations in soiciety. You will have to decide whether any of the four statements attributed to Mr. Dreier meets this definition of "defamatory." There is no dispute that they were statements of purported fact about Mr. Clorite, but, in order for Mr. Clorite to prevail on his counterclaims for libel or slander as to any of these four statements, you will have to find that Mr. Clorite proved, by a preponderance of the evidence, that that statement was defamatory.

Second, as to any statement by Mr. Dreier that you find was defamatory to Mr. Clorite, you will then have to determine whether the statement was published to a third party. This means that it was communicated to and either read or heard by someone other than Mr. Clorite himself. For Mr. Clorite to prevail on his libel claim as to that statement, you will have to find that he has proven, by a preponderance of the evidence, that Mr. Dreier communicated that statement in writing to at least one third party and that it was read by at least one third party. For Mr. Clorite to prevail on his slander claim as to that statement, you will have to find that he has proven, by a preponderance of the evidence, that Mr. Dreier made that statement orally to a third party and that it was heard by a third party.

If you determine that Mr. Clorite has carried his burden of proof on the first two elements as to one or more of the four statements he attributes to Mr. Dreier, then you must proceed to consideration of the third requirement as to that statement or those

statements.  The third requirement is that the statement be false.   That means that for Mr.

Clorite to prevail on his libel claim or his slander claim as to that statement, you will have

to find that it is more likely than not that that statement was false.  A statement is not false

if it is substantially true.  A statement is substantially true so long as the gist or substance of

the statement is true.  Mr. Dreier claims that each of the four statements attributed to him

was at least substantially, if not entirely, true.  If you find, as to any or all of these four

statements, that Mr. Clorite has failed to prove, by a preponderance of the evidence, that

the statement was false, then he cannot prevail on his counterclaims for libel or slander as

to that statement, and you must find in favor of Mr. Dreier on that statement.   On the other

hand, if you find that Mr. Clorite has proven, by a preponderance of the evidence, that one

or more of the statements attributed to Mr. Dreier was in fact false, under the definition I

have given you, then you are to proceed to consideration of the next requirement for Mr.

Clorite's counterclaims as to that statements or those statements.

        The fourth requirement is that the statement was made with the requisite degree of

fault.  In this case, that means that even if the statement was false, in order for Mr. Clorite to

prevail on his claim, he must prove by a preponderance of the evidence, that Mr. Dreier was

negligent in making the statement.  To find that Mr. Dreier was negligent as to any of the

four statements, you must find that he failed to exercise reasonable care to determine

whether that statement was true before making the statement.

        Finally, if you find that any of the statements attributed to Mr. Dreier satisfies all of

the first four requirements as I have explained them to you, you must then determine

whether it satisfies the fifth, which is that the statement was defamatory on its face or that

Mr. Clorite suffered "special damages" as a direct result of injury to his reputation from the

statement.  I find that none of the statements attributed to Mr. Dreier was defamatory on its

face, and therefore, in order for Mr. Clorite to prevail on his claim for libel or slander as to

any of the statements, he must prove, by a preponderance of the evidence, that he suffered

special damages as a direct result of harm to his reputation from that statement.


Special damages are different from the general damages which I defined for you in

the instructions on Mr. Dreier's claim. Special damages are not satisfied by showing the

damage to one's reputation itself or any personal humiliation or mental anguish as a result

of the defamatory statement.  Special damages requires proof of an actual financial loss that

has resulted directly from the injury to reputation caused by the defamatory statement.

Mr. Clorite claims that he suffered special damages because, according to Mr. Clorite, he

withdrew from college as a direct result of injury to his reputation from Mr. Dreier's

statements, and his tuition for the term he did not complete was not refunded.  Mr. Dreier

denies that.  He contends that Mr. Clorite's withdrawal was not the result of any damage to

his reputation from Mr. Dreier's statements but rather resulted from various other factors,

including Mr. Clorite's poor academic performance, his inability to keep up at school, the

school's determination that he had violated their disciplinary code and other disciplinary

issues separate and apart from any of these statements.  He contends that Mr. Clorite

determined to withdraw months before Mr. Dreier made his statements and that his tuition

was not refunded only because Mr. Clorite continued to attend class and waited too long

into the semester to formally withdraw and ask for a refund.  He further contends that Mr.

Clorite suffered no special damages as a result of not receiving a refund, because he was not the person who paid for his tuition.

You will have to determine whether Mr. Clorite has proven his special damages. He can prevail on his claim for libel or his claim for slander only if he has proven to you, by a preponderance of the evidence, that one or more of Mr. Dreier's statements damaged Mr. Clorite's reputation and that as a direct result of that damage to his reputation Mr. Clorite lost tuition for a semester at his college. If he has not proven this to you, you must find in favor of Mr. Dreier on Mr. Clorite's counterclaim for libel and on his counterclaim for slander.

If, however, you do find, by a preponderance of the evidence, that Mr. Clorite has proven all 5 elements of libel or slander as to any of the 4 statements he attributes to Mr. Dreier, you will then have to consider a defense that has been asserted by Mr. Dreier. He has asserted that all of the statements attributed to him are protected by a qualified privilege, in particular by what is called a "common interest privilege." This privilege applies to statements made between persons who share a common interest in the subject matter of the statement. Mr. Dreier contends that the statements he made as a student of Union College to the disciplinary panel of the college were made under this privilege. If he is correct and his statements are protected by this qualified privilege, then even if the statements were false, which he denies, he cannot be liable to Mr. Clorite unless he abused the privilege.

I find that Mr. Dreier's statements were protected by this qualified privilege. I therefore instruct you to find that he is not liable to Mr. Clorite for either libel or slander, regardless of whether the statements were false and regardless of your findings on any of the other elements of the claims, unless you find that Mr. Dreier abused his qualified privilege.

The qualified privilege is abused, and thereby lost, if Mr. Dreier made his statements with malice. As I previously instructed you on Mr. Dreier's claim, there are 2 types of malice. The first is referred to as "constitutional malice." This means that the statement was made with actual knowledge of its falsity or with a high degree of awareness of its probable falsity. Mr. Clorite contends that Mr. Dreier published all of his statments about Mr. Clorite with actual knowledge of their falsity or with a high degree of awareness that they were probably false. Mr. Dreier denies this. If you find that Mr. Clorite has proven, by a preponderance of the evidence, that Mr. Dreier in fact published one or more of his statements about Mr. Clorite with knowledge of its falsity or with a high degree of awareness of its probable falsity, then Mr. Dreier has lost his qualified privilege as to that statement and you may proceed to consider Mr. Dreier's liability as to that statement. If, on the other hand, you find that Mr. Clorite has failed to prove by a preponderance of the evidence that Mr. Dreier made that statement with knowledge of its falsity or with a high degree of awareness of its probable falsity, then you can find for Mr. Clorite only if he has proven, by a preponderance of the evidence, that Mr. Dreier acted with the second type of malice, which is referred to as "common law malice."

This type of malice means that the statement was not only false but that it was published solely out of spite or ill will. Mr. Clorite contends that this was the case, that Mr. Dreier made all of his statements about Mr. Clorite out of spite or ill will. Mr. Dreier denies this. He contends that he made his statements about Mr. Clorite as part of a school disciplinary proceeding to vindicate his rights and, at least in part, to defend himself against the conduct charges that Mr. Clorite had brought against him in that proceeding. He contends that he made these statements, at least in part, to defend his own reputation within the school community. In order for Mr. Clorite to overcome Mr. Dreier's privilege as to any of these statements based on common law malice, you will have to find that Mr. Clorite has proven, by a preponderance of the evidence, that Mr. Dreier made these statements out of spite or ill will towards Mr. Clorite, and you will have to find that spite or ill will was Mr. Dreier's only motive in making these statements. If you conclude that Mr. Dreier had another motive or an additional motive in making the statement, you cannot find that he lost his qualified privilege based on common law malice.

Thus, as to any of the 4 statements by Mr. Dreier which are the subject of Mr. Clorite's counterclaims for libel and slander, you may find for Mr. Clorite only if you find first that he has proven, by a preponderance of the evidence, each of the 5 elements of the claims as I have described them to you, and secondly, that he has proven, by a preponderance of evidence, that Mr. Dreier made the statement with malice, as I have defined that for you. If not, you must find for Mr. Dreier. If, on the other hand, Mr. Clorite has proven this to you by a preponderance of the evidence, you must then consider Mr. Clorite's damages.

Mr. Clorite contends that apart from his special damages, that being the lost college tuition referred to earlier, he has suffered damage to his reputation and emotional distress as a direct result of Mr. Dreier's statements. Such damage is referred to as "actual damages." Unlike Mr. Dreier's libel claim, which qualified as defamation on its face, in considering Mr. Clorite's claims you cannot presume that there was any damage to his reputation or any other actual damages. As to each statement he attributes to Mr. Dreier, you will have to determine whether Mr. Clorite has proven, by a preponderance of the evidence, that he actually suffered injury to his reputation or other injury as a direct result of the statement. If you determine that he has suffered such injury, you will then have to determine in what amount, if any, he should be compensated for those actual damages.

As I instructed you earlier in regard to Mr. Dreier's claim, in determining the amount of damages, if any, that you award Mr. Clorite, you are to fix an amount that, in the exercise of your good judgment and common sense, you find to be fair and just compensation for his injury. Fair compensation may vary, ranging from a small amount, if you decide that there was no substantial injury, to a substantial sum if you decide that the injury was substantial. Or you may award just a dollar or some other nominal amount as nominal damages if you determine that there was no compensable harm. In determining the amount of damages, you are to consider only the harm suffered by Mr. Clorite as a result of the libel or slander. You are not to consider the financial wherewithal of Mr. Dreier or his ability to pay or any other personal circumstance of the Plaintiff.

I have now completed my instruction to you on the Defendant's counterclaims for libel and slander.  As with Mr. Dreier's claim for libel, I am going to provide you with a written verdict form for Mr. Clorite's counterclaims for libel and slander.  The form will require you to answer a series of questions relating to the instructions I just gave you, and you will decide these counterclaims by answering those questions.

**Authorities for Jury Instruction #2**

1. Elements of Libel Claim:

Meloff v. New York Life Ins. Co., 240 F.3d 138, 145 (2d Cir. 2001);  Celle v. Filipino Reporter Enterprises, Inc., 209 F.3d 163, 176 (2d Cir. 2000).

2. Elements of Slander Claim:

Weldy v. Piedmont Airlines, Inc., 985 F.2d 57 (2d Cir. 1993); Albert v. Loksen 239 F.3d 256-66 (2d Cir. 2001).

3. Definition of Publication:

Youmans v. Smith, 153 NY 214, 218, 47 NE 265 (NY 1897); Fedrizzi v. Washingtonville Cent. Sch. Dist. 204 A.D. 2d 267, 268, 611 NYS 2d 584 (2nd Dep't 1994).

4. Statement of Fact rather than Opinion/ Issue of Law for Court:

Gross v. New York Times, 623 NE 2d 1163, 1167 (NY 1993); Rinaldi v. Holt, Rinehard & Winston, 42 NY2d 369, 366 NE 2d 1299, 1306, 397 NYS 2d 943 (1977); Celle v. Filipino Reporter Enterprise, 209 F.3d 163 (2000); Jewell v. NYP Holdings, Inc., 23 F. Supp. 2d 348, 377 (SDNY 1998); Levin v. McPhee  119 F.3d 189, 197 (2d Cir. 1997).

5. Standard of Fault:

A&E Prods. Group L.P. v. The Accessory Corp., 2001 S Dist. LEXIS 20245 (SDNY 2001); Huggins V. Moore, 94 NYS 2d 296, 302, 726 NE 2d 456, 460, 704 NYS 2d 904 (1999).

6. Falsity/Substantial Truth:

Meloff v. New York Life Insurance Co., 240 F.3d 138, 146 (2d Cir. 2001); Printers II, Inc. v. Professionals Publishing, Inc. 784 F.2d 141, 146 (2d Cir. 1986); Boehner v. Heise, 734 F. Supp. 2d 389, 399 (SDNY 2010); Guccione v. Hustler Magazine, Inc., 800 F.2d 298, 301 (2d Cir. 1986), cert denied, 479 US 1091 (1987).

7. Special Damages Required:

Davis v. Ross, 754 F.2d 80, 82 (2d Cir. 1985); Sharon v. Time Inc., 575 F.Supp. 1162 (SDNY 1983);  Hinsdale v. Orange County Publications, Inc., 17 NY 2d 284, 270 NYS 2d 592, 217 NE 2d 650 (1966).

8. Special Damages Definition:

Celle v. Filipino Reporter Enterprises, 2009 F.3d 163, 179 (2d Cir. 2000); Matherson v. Marchello, 100
A.D. 2d 233, 235, 473 NYS 2d 998 (2nd Dep't 1984).

9. Common Interest Privilege:

Konikoff v. Prudential Ins. Co. of Am., 234 F.3d 92, 98 (2d Cir. 2000); Fuji Photo Film USA , Inc. v.McNulty, 669 F. Supp. 2d 405 (SDNY 2009); Boehner v.Springland Trading, Inc., 734 F. Supp. 2d 389, 399 (SDNY 2010); Liberman v. Gelstein, 80 NY 2d 429, 605 NE 2d 344, 590 NYS.2d 857, 862 (1992); Foster v.Churchill, 87 NY 2d 744, 751, 642 NYS 2d 583, 665 NE 2d 153 (1996).

10. Common Interest Privilege at University Disciplinary Proceeding:

Klinge v. Ithaca College, 634 NYS 2d 1000, 1005 (Sup. Cot. 1995), aff'd as mod. on other grounds, 652 NYS 2d 377 (App Dep't 1997); see also Stukuls v. State of New York, 42 NY 2d 272, 397 NYS 2d 740, 366 NE 2d 829.

11. Privilege Is Question of Law for Court:

Stewart v. Florence Nightengale Health Center/Carnegie Partners, Inc., 1999 US Dist. LEXIS 3985 at 32, 1999 WL 179373 (SDNY 1999).

12. Overcoming Qualified Privilege/Malice

Weldy v. Piedmont Airlines, 985 F.2d 57, 63 (2d Cir.1992); Boehner v.Springland Trading, Inc., 734 F.Supp. 2d 389, 401(SDNY 2010); Liberman v. Gelsetin , 80 NY 2d 429, 605 NE 2d 344, 347-48, 590 NYS 2d 857, 860-61 (1992); Fuji Photo Film USA, Inc. v. McNulty, 669 F.Supp. 2d 405 (SDNY 2009).

13. Loss of Privilege is Question of Fact for Jury Where Sufficient Evidence of Malice:

Boehner v. Springland Trading, Inc., 734 F.Supp. 2d 389, 401 (SDNY 2010); Canino v.Barclays Bank, PLC, 1998 US Dist. LEXIS 53, 1998 WL 7219 at 5 (SDNY Jan. 7, 1998); Stukuls v. State, 42 NY. 2d 272, 279, 366 NE 2d 829, 397 NYS 2d 740, 745 (1977).

14. Types of General Damages That May Be Recovered:

Bishop v. New York Times Co, 233 NY 446, 135 NE 845; Restatement, Second, Torts, sec. 623.

**Special Verdict Form for Defendant's Counterclaims for Libel and Slander**

As to each question, at least __ jurors must agree on the answer.

Part A.  As to Plaintiff's Statement that Defendant "Punched" Him:

    1. Was the Plaintiff's statement defamatory?

      Yes __                   No __

      [Signatures]            [Signatures]

      If the answer is No, you must now also answer No to Question # 13 and No to Question # 14 and proceed to Part B of this Verdict Form.

      If the answer is Yes, proceed to Question #2.

    2.  Did the statement refer to the Defendant?
       You are instructed to answer Yes and proceed to Question #3

      Yes __

      [Signatures]

    3. Was the statement a statement of fact?
       You are instructed to answer Yes and proceed to Question #4.

      Yes __

      [Signatures]

    4. Did the Plaintiff publish the statement in writing?

      Yes __                   No __

      [Signatures]            [Signatures]

      If the answer is No, you must now also answer No to Question #13 and then continue with Question # 5.

      If the answer is Yes, continue directly with Question # 5.

    5. Did the Plaintiff make the statement orally to a third party?

Yes __                                No __

[Signatures]                          [Signatures]

If the answer is No, you must now also answer No to Question #14 and then proceed to Question #6, unless your answer to Question #4 was also No, in which case you should proceed directly to Part B of this Verdict Form.

If the answer is Yes, continue directly with Question #6.

6. Was the statement false?

Yes __                                No __

[Signatures]                          [Signatures]

If the answer is No, you must now also answer No to Question #13 (if you have not already done so) and No to Question #14 (if you have not already done so) and then proceed to Part B of this Verdict Form.

If the answer is Yes, proceed to question #7.

7. Was the Plaintiff negligent in making the statement?

Yes __                                No __

[Signatures]                          [Signatures]

If the answer is No, you must answer now answer No to Question #13 (if you have not already done so) and No to Question #14 (if you have not already done so) and then proceed to Part B of this Verdict Form.

If the answer is Yes, proceed to Question #8.

8. Was the statement defamatory on its face?
   You are instructed to answer No and proceed to Question #10.

                         No __

                    [Signatures]

9. Did the Defendant lose any college tuition as a direct result of injury to his reputation from the Plaintiff's statement?

Yes ___                               No ___

[Signatures]                              [Signatures]

If the answer is No, you must now answer No to Question #10 and No to Question #13 (if you have not already done so) and No to Question #14 (if you have not already done so) and then proceed to Part B of this Verdict Form.

If the answer is Yes, you must now answer Yes to Question #10 and proceed to Question #11.

10.  Did the Defendant suffer "special damages" as a direct result of the defamatory statement?

Yes __                                    No __

[Signatures]                              [Signatures]


11.  Did the Plaintiff know that his statement was false or make the statement with a high degree of awareness of its probable falsity?

Yes __                                    No __

[Signatures]                              [Signatures]

If the answer is No, proceed to Question # 12.

If the answer is Yes, proceed to Question #13.

12.  Did the Plaintiff make his statement solely out of spite, ill-will or hatred for the Defendant?

Yes __                                    No __

[Signatures]                              [Signatures]

If the answer is No, you must now answer No to Question #13 and No to Question #14, and then proceed to Part B of this Verdict Form.

If the answer is Yes, proceed to Question #13.


13.  Do you find for the Defendant on his counterclaim for libel based on this statement?

If your answer was No to Question #1 or #4 or #6 or #7 or #9 or #10 or #12, then you must answer No to this Question #13 and proceed to Question #14.

If your answer was Yes to Questions #1 and #2 and #3 and #4 and #6 and #7 and #9 and #10, and if your answer was Yes to either Question #11 or #12, then you must answer Yes to this Question #13 and proceed to Question #14.

Yes __                                          No __

[Signatures]                                    [Signatures]


14.  Do you find for the Defendant on his counterclaim for slander based on this statement?

If your answer was No to Question #1 or #5 or #6 or #7 or #9 or #10 or #12, then you must answer No to this Question #14 and then proceed to Part B of this Verdict Form.

If your answer was Yes to Questions #1 and #2 and #3 and #5 and #6 and #7 and #9 and #10, and if your answer was Yes to either Question #11 or #12, then you must answer Yes to this Question #14 and proceed to Question #15.

Yes __                                          No __

[Signatures]                                    [Signatures]


15.  State the amount of special damages that you award to the Defendant.

If your answer was No to Questions #13 and #14, do not answer this Question #15 and proceed to Part B of this Verdict Form.

If your answer was Yes to either Question #13 or #14, answer with your determined amount to this Question #15 and then proceed to Question #16.

Amount $ _____

[Signatures]

16.  Do you find that the Defendant has suffered any actual injury apart from his special damages?

If your answer was No to Question #13 and Question #14, do not answer this Question #16 and proceed to Part B of this Verdict Form.

If your answer was Yes to either Question #13 or Question #14, answer this Question #16 and then proceed to Question #17.

Yes ___                                      No ___

[Signatures]                              [Signatures]

17. State the amount of any actual damages that you award the Defendant in compensation for any injury apart from his special damages.

If your answer was No to Question #16, answer 0 to this Question #17 and then proceed to Question #18.

If your answer was Yes to Question #16, answer with your determined amount to this Question #17 and then proceed to Question #18.

Amount $ _____

[Signatures]

18. Do you award the Defendant any nominal damages?

Yes ___                                      No ___

[Signatures]                              [Signatures]

If your answer is No, proceed to Part B of this Verdict Form.

If your answer is Yes, proceed to Question #19.


19. State the amount of nominal damages that you award the Defendant.

Amount $ _____

[Signatures]

**Special Verdict Form for Defendant's Counterclaims for Libel and Slander**

As to each question, at least __ jurors must agree on the answer.

Part B.  As To Plaintiff's Statement That Defendant Said He Would Make Plaintiff's Life "A Living Hell.'"  In the second set (which we'll call the Part C set), replace the Part A heading with the following:

   1. Was the Plaintiff's statement defamatory?

     Yes __                     No __

     [Signatures]             [Signatures]

     If the answer is No, you must now also answer No to Question # 13 and No to Question # 14 and proceed to Part C of this Verdict Form.

     If the answer is Yes, proceed to Question #2.

   2.  Did the statement refer to the Defendant?
     You are instructed to answer Yes and proceed to Question #3

     Yes __

     [Signatures]

   3. Was the statement a statement of fact?
     You are instructed to answer Yes and proceed to Question #4.

     Yes __

     [Signatures]

   4. Did the Plaintiff publish the statement in writing?

     Yes __                     No __

     [Signatures]             [Signatures]

     If the answer is No, you must now also answer No to Question #13 and then continue with Question # 5.

     If the answer is Yes, continue directly with Question # 5.

5. Did the Plaintiff make the statement orally to a third party?

Yes __                              No __

[Signatures]                        [Signatures]

If the answer is No, you must now also answer No to Question #14 and then proceed to Question #6, unless your answer to Question #4 was also No, in which case you should proceed directly to Part C of this Verdict Form.

If the answer is Yes, continue directly with Question #6.

6. Was the statement false?

Yes __                              No __

[Signatures]                        [Signatures]

If the answer is No, you must now also answer No to Question #13 (if you have not already done so) and No to Question #14 (if you have not already done so) and then proceed to Part C of this Verdict Form.

If the answer is Yes, proceed to question #7.

7. Was the Plaintiff negligent in making the statement?

Yes __                              No __

[Signatures]                        [Signatures]

If the answer is No, you must answer now answer No to Question #13 (if you have not already done so) and No to Question #14 (if you have not already done so) and then proceed to Part C of this Verdict Form.

If the answer is Yes, proceed to Question #8.

8. Was the statement defamatory on its face?
   You are instructed to answer No and proceed to Question #10.

No __

[Signatures]

9. Did the Defendant lose any college tuition as a direct result of injury to his reputation from the Plaintiff's statement?

Yes ___                              No ___

[Signatures]                         [Signatures]

If the answer is No, you must now answer No to Question #10 and No to Question #13 (if you have not already done so) and No to Question #14 (if you have not already done so) and then proceed to Part C of this Verdict Form.

If the answer is Yes, you must now answer Yes to Question #10 and proceed to Question #11.

10.  Did the Defendant suffer "special damages" as a direct result of the defamatory statement?

Yes __                               No __

[Signatures]                         [Signatures]


11.  Did the Plaintiff know that his statement was false or make the statement with a high degree of awareness of its probable falsity?

Yes __                               No __

[Signatures]                         [Signatures]

If the answer is No, proceed to Question # 12.

If the answer is Yes, proceed to Question #13.

12.  Did the Plaintiff make his statement solely out of spite, ill-will or hatred for the Defendant?

Yes __                               No __

[Signatures]                         [Signatures]

If the answer is No, you must now answer No to Question #13 and No to Question #14, and then proceed to Part C of this Verdict Form.

If the answer is Yes, proceed to Question #13.


13.  Do you find for the Defendant on his counterclaim for libel based on this statement?

If your answer was No to Question #1 or #4 or #6 or #7 or #9 or #10 or #12, then you must answer No to this Question #13 and proceed to Question #14.

If your answer was Yes to Questions #1 and #2 and #3 and #4 and #6 and #7 and #9 and #10, and if your answer was Yes to either Question #11 or #12, then you must answer Yes to this Question #13 and proceed to Question #14.

Yes __                                No __

[Signatures]                          [Signatures]

14. Do you find for the Defendant on his counterclaim for slander based on this statement?

If your answer was No to Question #1 or #5 or #6 or #7 or #9 or #10 or #12, then you must answer No to this Question #14 and then proceed to Part C of this Verdict Form.

If your answer was Yes to Questions #1 and #2 and #3 and #5 and #6 and #7 and #9 and #10, and if your answer was Yes to either Question #11 or #12, then you must answer Yes to this Question #14 and proceed to Question #15.

Yes __                                No __

[Signatures]                          [Signatures]

15. State the amount of special damages that you award to the Defendant.

If your answer was No to Questions #13 and #14, do not answer this Question #15 and proceed to Part C of this Verdict Form.

If your answer was Yes to either Question #13 or #14, answer with your determined amount to this Question #15 and then proceed to Question #16.

Amount $ _____

[Signatures]

16. Do you find that the Defendant has suffered any actual injury apart from his special damages?

If your answer was No to Question #13 and Question #14, do not answer this Question #16 and proceed to Part C of this Verdict Form.

If your answer was Yes to either Question #13 or Question #14, answer this Question #16 and then proceed to Question #17.

Yes \_\_\_                                        No \_\_

[Signatures]                                    [Signatures]

17.  State the amount of any actual damages that you award the Defendant in compensation for any injury apart from his special damages.

If your answer was No to Question #16, answer 0 to this Question #17 and then proceed to Question #18.

If your answer was Yes to Question #16, answer with your determined amount to this Question #17 and then proceed to Question #18.

Amount $ _____

[Signatures]

18.  Do you award the Defendant any nominal damages?

Yes \_\_\_                                        No \_\_

[Signatures]                                    [Signatures]

If your answer is No, proceed to Part C of this Verdict Form.

If your answer is Yes, proceed to Question #19.

19. State the amount of nominal damages that you award the Defendant.

Amount $ _____

[Signatures]

**Special Verdict Form for Defendant's Counterclaims for Libel and Slander**

As to each question, at least __ jurors must agree on the answer.

Part C.  As To Plaintiff's Statement That Defendant Said He Would Make Brooke Donnelly's Life "A Living Hell" If She Were To Support Plaintiffs' Allegations Against Defendant."

   1. Was the Plaintiff's statement defamatory?

     Yes __                 No __

     [Signatures]           [Signatures]

     If the answer is No, you must now also answer No to Question # 13 and No to Question # 14 and proceed to Part D of this Verdict Form.

     If the answer is Yes, proceed to Question #2.

   2.  Did the statement refer to the Defendant?
     You are instructed to answer Yes and proceed to Question #3

     Yes __

     [Signatures]

   3. Was the statement a statement of fact?
     You are instructed to answer Yes and proceed to Question #4.

     Yes __

     [Signatures]

   4. Did the Plaintiff publish the statement in writing?

     Yes __                 No __

     [Signatures]           [Signatures]

     If the answer is No, you must now also answer No to Question #13 and then continue with Question # 5.

     If the answer is Yes, continue directly with Question # 5.

   5. Did the Plaintiff make the statement orally to a third party?

Yes __                                    No __

[Signatures]                              [Signatures]

If the answer is No, you must now also answer No to Question #14 and then proceed to Question #6, unless your answer to Question #4 was also No, in which case you should proceed directly to Part D of this Verdict Form.

If the answer is Yes, continue directly with Question #6.

6. Was the statement false?

Yes __                                    No __

[Signatures]                              [Signatures]

If the answer is No, you must now also answer No to Question #13 (if you have not already done so) and No to Question #14 (if you have not already done so) and then proceed to Part D of this Verdict Form.

If the answer is Yes, proceed to question #7.

7. Was the Plaintiff negligent in making the statement?

Yes __                                    No __

[Signatures]                              [Signatures]

If the answer is No, you must answer now answer No to Question #13 (if you have not already done so) and No to Question #14 (if you have not already done so) and then proceed to Part D of this Verdict Form.

If the answer is Yes, proceed to Question #8.

8. Was the statement defamatory on its face?
   You are instructed to answer No and proceed to Question #10.

                    No __

              [Signatures]

9. Did the Defendant lose any college tuition as a direct result of injury to his reputation from the Plaintiff's statement?

Yes ___                                   No ___

[Signatures]                          [Signatures]

If the answer is No, you must now answer No to Question #10 and No to Question #13 (if you have not already done so) and No to Question #14 (if you have not already done so) and then proceed to Part D of this Verdict Form.

If the answer is Yes, you must now answer Yes to Question #10 and proceed to Question #11.

10.  Did the Defendant suffer "special damages" as a direct result of the defamatory statement?

Yes __                                No __

[Signatures]                          [Signatures]


11.  Did the Plaintiff know that his statement was false or make the statement with a high degree of awareness of its probable falsity?

Yes __                                No __

[Signatures]                          [Signatures]

If the answer is No, proceed to Question # 12.

If the answer is Yes, proceed to Question #13.

12.  Did the Plaintiff make his statement solely out of spite, ill-will or hatred for the Defendant?

Yes __                                No __

[Signatures]                          [Signatures]

If the answer is No, you must now answer No to Question #13 and No to Question #14, and then proceed to Part D of this Verdict Form.

If the answer is Yes, proceed to Question #13.


13.  Do you find for the Defendant on his counterclaim for libel based on this statement?

If your answer was No to Question #1 or #4 or #6 or #7 or #9 or #10 or #12, then you must answer No to this Question #13 and proceed to Question #14.

If your answer was Yes to Questions #1 and #2 and #3 and #4 and #6 and #7 and #9 and #10, and if your answer was Yes to either Question #11 or #12, then you must answer Yes to this Question #13 and proceed to Question #14.

Yes __                                          No __

[Signatures]                                    [Signatures]

14.  Do you find for the Defendant on his counterclaim for slander based on this statement?

If your answer was No to Question #1 or #5 or #6 or #7 or #9 or #10 or #12, then you must answer No to this Question #14 and then proceed to Part D of this Verdict Form.

If your answer was Yes to Questions #1 and #2 and #3 and #5 and #6 and #7 and #9 and #10, and if your answer was Yes to either Question #11 or #12, then you must answer Yes to this Question #14 and proceed to Question #15.

Yes __                                          No __

[Signatures]                                    [Signatures]

15.  State the amount of special damages that you award to the Defendant.

If your answer was No to Questions #13 and #14, do not answer this Question #15 and proceed to Part D of this Verdict Form.

If your answer was Yes to either Question #13 or #14, answer with your determined amount to this Question #15 and then proceed to Question #16.

Amount $ _____

[Signatures]

16.  Do you find that the Defendant has suffered any actual injury apart from his special damages?

If your answer was No to Question #13 and Question #14, do not answer this Question #16 and proceed to Part D of this Verdict Form.

If your answer was Yes to either Question #13 or Question #14, answer this Question #16 and then proceed to Question #17.

Yes ___                                          No ___

[Signatures]                                     [Signatures]

17. State the amount of any actual damages that you award the Defendant in compensation for any injury apart from his special damages.

If your answer was No to Question #16, answer 0 to this Question #17 and then proceed to Question #18.

If your answer was Yes to Question #16, answer with your determined amount to this Question #17 and then proceed to Question #18.

Amount $ _____

[Signatures]

18. Do you award the Defendant any nominal damages?

Yes ___                                          No ___

[Signatures]                                     [Signatures]

If your answer is No, proceed to Part D of this Verdict Form.

If your answer is Yes, proceed to Question #19.

19. State the amount of nominal damages that you award the Defendant.

Amount $ _____

[Signatures]

**Special Verdict Form for Defendant's Counterclaims for Libel and Slander**

As to each question, at least __ jurors must agree on the answer.

Part D.  As To Plaintiff's Statement That Defendant Furnished False Information To A College Official:

   1. Was the Plaintiff's statement defamatory?

     Yes __               No __

     [Signatures]         [Signatures]

     If the answer is No, you must now also answer No to Question # 13 and No to Question # 14 and proceed no further with this Verdict Form. of this Verdict Form.

     If the answer is Yes, proceed to Question #2.


   2.  Did the statement refer to the Defendant?
     You are instructed to answer Yes and proceed to Question #3

     Yes __

     [Signatures]


   3. Was the statement a statement of fact?
     You are instructed to answer Yes and proceed to Question #4.

     Yes __

     [Signatures]

   4. Did the Plaintiff publish the statement in writing?

     Yes __               No __

     [Signatures]         [Signatures]

     If the answer is No, you must now also answer No to Question #13 and then continue with Question # 5.

     If the answer is Yes, continue directly with Question # 5.

   5. Did the Plaintiff make the statement orally to a third party?

Yes __                                No __

[Signatures]                          [Signatures]

If the answer is No, you must now also answer No to Question #14 and then proceed to
Question #6, unless your answer to Question #4 was also No, in which case you should
proceed no further with this Verdict Form..

If the answer is Yes, continue directly with Question #6.

6. Was the statement false?

Yes __                                No __

[Signatures]                          [Signatures]

If the answer is No, you must now also answer No to Question #13 (if you have not
already done so) and No to Question #14 (if you have not already done) and then
proceed proceed no further with this Verdict Form..

If the answer is Yes, proceed to question #7.

7. Was the Plaintiff negligent in making the statement?

Yes __                                No __

[Signatures]                          [Signatures]

If the answer is No, you must answer now answer No to Question #13 (if you have not
already done so) and No to Question #14 (if you have not already done) and then
proceed no further with this Verdict Form..

If the answer is Yes, proceed to Question #8.

8. Was the statement defamatory on its face?
   You are instructed to answer No and proceed to Question #10.

No __

[Signatures]

9. Did the Defendant lose any college tuition as a direct result of injury to his reputation
from the Plaintiff's statement?

Yes ___                               No ___

[Signatures]                          [Signatures]

If the answer is No, you must now answer No to Question #10 and No to Question #13 (if you have not already done so) and No to Question #14 (if you have not already done so) and then proceed no further with this Verdict Form..

If the answer is Yes, you must now answer Yes to Question #10 and proceed to Question #11.

10. Did the Defendant suffer "special damages" as a direct result of the defamatory statement?

Yes __                                No __

[Signatures]                          [Signatures]


11. Did the Plaintiff know that his statement was false or make the statement with a high degree of awareness of its probable falsity?

Yes __                                No __

[Signatures]                          [Signatures]

If the answer is No, proceed to Question # 12.

If the answer is Yes, proceed to Question #13.

12. Did the Plaintiff make his statement solely out of spite, ill-will or hatred for the Defendant?

Yes __                                No __

[Signatures]                          [Signatures]

If the answer is No, you must now answer No to Question #13 and No to Question #14, and then proceed to proceed no further with this Verdict Form.

If the answer is Yes, proceed to Question #13.


13. Do you find for the Defendant on his counterclaim for libel based on this statement?

If your answer was No to Question #1 or #4 or #6 or #7 or #9 or #10 or #12, then you must answer No to this Question #13 and proceed to Question #14.

If your answer was Yes to Questions #1 and #2 and #3 and #4 and #6 and #7 and #9 and #10, and if your answer was Yes to either Question #11 or #12, then you must answer Yes to this Question #13 and proceed to Question #14.

Yes __                              No __

[Signatures]                        [Signatures]


14.  Do you find for the Defendant on his counterclaim for slander based on this statement?

If your answer was No to Question #1 or #5 or #6 or #7 or #9 or #10 or #12, then you must answer No to this Question #14 and then proceed to proceed no further with this Verdict Form..

If your answer was Yes to Questions #1 and #2 and #3 and #5 and #6 and #7 and #9 and #10, and if your answer was Yes to either Question #11 or #12, then you must answer Yes to this Question #14 and proceed to Question #15.

Yes __                              No __

[Signatures]                        [Signatures]


15.  State the amount of special damages that you award to the Defendant.

If your answer was No to Questions #13 and #14, do not answer this Question #15 and proceed no further with this Verdict Form..

If your answer was Yes to either Question #13 or #14, answer with your determined amount to this Question #15 and then proceed to Question #16.

Amount $ _____

[Signatures]

16.  Do you find that the Defendant has suffered any actual injury apart from his special damages?

If your answer was No to Question #13 and Question #14, do not answer this Question #16 and proceed no further with this Verdict Form..

If your answer was Yes to either Question #13 or Question #14, answer this Question #16 and then proceed to Question #17.

Yes ___                                    No ___

[Signatures]                               [Signatures]

17.  State the amount of any actual damages that you award the Defendant in compensation for any injury apart from his special damages.

If your answer was No to Question #16, answer 0 to this Question #17 and then proceed to Question #18.

If your answer was Yes to Question #16, answer with your determined amount to this Question #17 and then proceed to Question #18.

Amount $ _____

[Signatures]

18.  Do you award the Defendant any nominal damages?

Yes ___                                    No ___

[Signatures]                               [Signatures]

If your answer is No, proceed no further with this Verdict Form..

If your answer is Yes, proceed to Question #19.


19. State the amount of nominal damages that you award the Defendant.

Amount $ _____

[Signatures]

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

SPENCER D. DREIER,

      Plaintiff,

         v.

BEN CLORITE,

      Defendant.

09 Civ. 7553 (JGK)

**PLAINTIFF'S PROPOSED JURY INSTRUCTION #3**

**PLAINTIFF'S CLAIMS FOR ASSAULT AND BATTERY**

-------------------------------------------------------x

      I will now instruct you on Plaintiff's claims for assault and battery.

      Mr. Dreier claims that in the early morning of January 27, 2009, the Defendant, Mr. Clorite, aggressively tackled Mr. Dreier, without justification, in the dormitory room that they shared as college roommates.

      More specifically, he contends that Mr. Clorite had locked him out of the room at about 2:00 a.m. and refused to allow him in for about an hour and a half, while Mr. Dreier knocked on the door several times and asked to be let in.  He says that at about 3:30 a.m. he entered the room with a key and that after some words were exchanged Mr. Clorite tackled Mr. Dreier against the wall and then onto his bed before Mr. Dreier made any contact with Mr. Clorite.  The parties then wrestled briefly until one of their other suitemates came in and separated them.

Mr. Clorite admits that he tackled Mr. Dreier before any contact by Mr. Dreier, but he claims justification by reason of self-defense. He claims that after Mr. Dreier entered the room, Mr. Dreier stood over him and shouted various obscenities. He claims that he was apprehensive that Mr. Dreier would attack him and that he tackled Mr. Dreier only to ward off that anticipated attack. Mr. Dreier admits calling Mr. Clorite a "dipshit" when he entered the room but denies that he shouted at him, denies that he stood over him and denies that he threatened Mr. Clorite with any physical engagement, either by his words or his actions.

Under the law of New York, which applies to this case, an assault occurs when an individual places another individual in reasonable apprehension of imminent bodily harm or offensive contact. A battery occurs when an individual actually makes offensive or harmful bodily contact with another individual that is intentional and without that individual's consent.

Based on the foregoing, in order for you to find Mr. Clorite liable for battery you must first find that Mr. Dreier has proven, by a preponderance of the evidence, that Mr. Clorite intentionally made offensive or harmful bodily contact with Mr. Dreier without Mr. Dreier's consent. By reason of Mr. Clorite's admission that he tackled Mr. Dreier, there is no dispute about that, and so I instruct you to find that Mr. Clorite did make the necessary contact with Mr. Dreier to constitute a battery.

Then, however, you must determine whether Mr. Clorite has proven his defense of

justification.  In order for him to prevail on this defense to Mr. Dreier's claim for battery,

you must find that Mr. Clorite has proven, by a preponderance of the evidence, that he was

in reasonable apprehension of death or great bodily harm when he first made contact with

Mr. Dreier.  If he has proven that to you, then you must find in Mr. Clorite's favor on Mr.

Dreier's claim for battery.  If, on the other hand, you do not find that Mr. Clorite was in

reasonable apprehension of death or great bodily harm at the time he tackled Mr. Dreier,

then you must find in favor of Mr. Dreier on his claim for battery.


As to Mr. Dreier's claim for assault, in order for you to find for Mr. Dreier on this

claim, you must first find that he has proven, by a preponderance of the evidence, that at

some point, even if only briefly, either before or during their altercation, Mr. Clorite

intentionally placed Mr. Dreier in apprehension of imminent harmful or offensive contact.

It is undisputed that such contact occurred.  What has to be shown on this claim for assault

is that either (i) just before the initial contact, Mr. Clorite intended to place and did place

Mr. Dreier in apprehension of such contact, or (ii) after the initial contact, Mr. Clorite

intended to place and did place Mr. Dreier in reasonable apprehension of further imminent

contact.


To find that Mr. Clorite intentionally placed Mr. Dreier in such apprehension of

harmful or offensive physical contact, you must find that Mr. Clorite did so with some

physical act or gesture on his part.  Verbalization alone does not suffice.  This physical act

or gesture could have occurred just before Mr. Clorite made his initial contact or thereafter,

if it created reasonable apprehension on Mr. Dreier's part of some subsequent contact. Mr.
Clorite claims that he saw Mr. Clorite lunge at him just before Mr. Clorite first made contact
with him and that this created the apprehension of contact. You will have to determine
whether that was so. And again, to find that Mr. Dreier was in reasonable apprehension of
contact, you do not need to find that he was actually fearful of such contact, only that he
anticipated the contact and anticipated that it would be harmful or offensive.

If you find that that was so, then you need to consider Mr. Clorite's defense of
justification. In order for Mr. Clorite to prevail on this defense to Mr. Dreier's claim for
assault, you must find that Mr. Clorite has proven, by a preponderance of the evidence, that
before he placed Mr. Dreier in apprehension of imminent harmful or offensive contact Mr.
Dreier himself had intentionally placed Mr. Clorite in apprehension of physical attack.
Again, mere verbalization is not enough to create such reasonable apprehension. For Mr.
Clorite to prevail on this defense, you would have to find that Mr. Dreier intentionally
created this apprehension by some physical act or gesture which was reasonably perceived
as threatening. Mr. Clorite claims that Mr. Dreier created this apprehension by standing
over him, getting in his face, as he says, and shouting obscenities. You will have to
determine whether that was so and, if so, whether it created justifiable apprehension on
Mr. Clorite's part.

I will now instruct you on damages in regard to the Plaintiff's claims for assault and
battery.

In the event you find that Mr. Dreier has failed to prove his claim for assault and has failed to prove his claim for battery, then Mr. Dreier of course would be entitled to no damages of any sort on either of those 2 claims.  However, if you find that he has proven his claim for assault, then you need to determine whether he is entitled to damages on that claim, and if so, in what amount.  Likewise, if you find he has proven his claim for battery, then you need to determine whether he is entitled to damages on that claim, and if so, in what amount.

In determining whether Mr. Dreier should be awarded damages on either his claim for battery or his claim for assault or both, you need to determine whether he has suffered harm as a direct result of Mr. Clorite's actions, and if so, what amount is appropriate to compensate him for that harm.  Mr. Dreier acknowledges that he suffered no physical injury of any consequence and required no medical attention, and you should take that into account.  However, he claims to have suffered humiliation and apprehension and mental anguish, and if you find that is so, you may award him compensatory damages for that.  You should award damages in whatever amount you find to be fair and reasonable to compensate Mr. Dreier for his harm.  That can be a small amount or a larger amount, depending on your assessment of the harm.   You can award nominal damages of just $1 or some such nominal amount if you determine that is what is warranted.  By these instructions I do not imply what amount, if any, is appropriate.

Finally, if you find Mr. Clorite liable on Mr. Dreier's claim for assault or on his claim for battery or both, you need to consider Mr. Dreier's request for punitive damages.   In

order for you to award punitive damages, you must find that Mr. Dreier has proven, by a preponderance of the evidence, that in committing his assault or his battery or both, Mr. Clorite has either (i) engaged in malicious wrongdoing or (ii) engaged in morally culpable conduct, or (iii) engaged in reckless or willful conduct such that punitive damages will serve the purpose of deterring him or others from engaging in similar conduct in the future. In such event, you may, but are not required to, award punitive damages.

If you do award punitive damages, as I have previously stated, in determining the amount you should consider most heavily the level of reprehensibility of Mr. Clorite's conduct. You should also consider (i) the actual harm to Mr. Dreier, (ii) what amount is needed to discourage Mr. Clorite and others from engaging in similar conduct in the future, and (iii) Mr. Clorite's financial condition and the likely impact the award of punitive damages will have on him.

That completes my instruction on Plaintiff's claims for assault and battery. As I did with the defamation claims and counterclaims, I am going to provide you with a written verdict form for the Plaintiff's claims for assault and battery. It will require that you answer a series of questions relating to the instructions I just gave you, and you will decide these claims by answering those questions.

**Authorities for Jury Instruction #3**

1. Elements of assault claim:

Girden v. Sandals Internationial, 262 F.3d 195, 203 (2d Cir. 2001); Cohen v. Davis, 926 F.Supp. 399 (SDNY 1996) (Koeltl, J.).

2. Apprehension of bodily harm must be reasonable/Must be based on physical menacing conduct, not just words.

Farash v. Continental Airlines, Inc., 574 F.Supp. 2d 356, 368 (S.D.N.Y. 2008); Collom v. Freeport, 691 F.Supp. 637, 641 (E.D.N.Y. 1989); Fugazy v. Corbetta, 34 A.D.2d 728, 729, 825 NYS 2d 120, 122 (2nd Dep't 2006); Rafter v. Bank of America, 2009 US Dist. LEXIS 215542 (SDNY 2009); Carroll v. New York Property Inc. Underwriting Assoc., 88 A.D.2d 527, 450 NYS 2d 21, 22 (1st Dep't), appeal dismissed, 57 NY 2d 602 (1982).

3. Elements of battery claim:

Carroll v. Bayeriche Landesbank, 125 F.Supp. 2d 58, 65 (S.D.N.Y. 2000); Cohen v. Davis, 926 F.Supp. 399 (SDNY 1996) (Koeltl, J.); Girden v. Sandals, 262 F.2d 195, 203 (2d Cir. 2001).

4. Elements of justification defense to battery claim:

Merzon v. County of Suffolk, 767 F.Supp. 432,448 (E.D.N.Y. 1991); Van Vooren v. Cook, 75 N.Y.S.2d 362, 366 (App.Div. 1947).

5. Availability of punitive damages:

Action S.A. v. Marc Rich & Co., Inc., 951 F.2d 504, 509 (2d Cir. 1991); Whitney v. Citibank, N.A., 782 F.2d 1106, 1118 (2d Cir. 1985); Cohen v. Davis, 926 F.Supp. 399, 405 (S.D.N.Y. 1996) (Koeltl, J.); Commerce & Ind. Ins. Co. v. US Bank Nat'l Assoc., 2008 US Dist. LEXIS (Sept. 3, 2008) (Koeltl, J.); Walker v. Sheldon, 10 N.Y.2d 401, 404-05, 223 N.Y.S.2d 488, 490-91, 179 N.E.2d 497 (1961); Roy Export Co. Est. of Valdez v. Columbia Broadcasting System, Inc., 672 F.2d 1095, 1106 (2d Cir.), cert. denied, 459 U.S. 826 (1982).

**Special Verdict form for Plaintiff's Claims for Assault and Battery**

At least ___ jurors must agree on each answer.

1.  Did the Defendant intentionally make offensive or harmful bodily contact with the Plaintiff without the Plaintiff's consent?

    You are instructed to answer Yes.

    Yes ___

    [Signatures]


2.  Had the Plaintiff placed the Defendant under reasonable apprehension of death or great bodily harm when the Defendant first made contact with the Plaintiff?

    Yes ___                        No ___

    [Signatures]                [Signatures]

    If your answer is Yes, you must now answer No to Question #3 and then proceed to Question # 10.
    If your answer is No, you must now answer Yes to Question #3 and then proceed to Question #4.


3.  Do you find for the Plaintiff on his claim for battery?

    Yes ___                        No ___

    [Signatures]                [Signatures]

    If your answer is Yes, proceed to Questioin #4.
    If your answer is No, proceed to Question #10.


4.  Did the Plaintiff suffer any harm as a direct result of Defendant's battery?

    Yes ___                        No ___

    [Signatures]                [Signatures]


5.  Do you find that the Plaintiff should receive any compensatory or nominal damages for the Defendant's battery?

Yes ___                          No ___

[Signatures]                     [Signatures]

If your answer is Yes, proceed to Question #6.
If your answer is No, you should now answer 0 to Question # 6 and proceed to Question #7.


6.  State the amount of compensatory or nominal damages that you award to Plaintiff on his claim for battery.

Amount $ _____

[Signatures]


7.  Did the Defendant engage in malicious wrongdoing, or morally culpable conduct or reckless or wilful conduct in committing his battery?

Yes ___                          No ___

[Signatures]                     [Signatures]

If your answer is Yes, proceed to Question #8.
If your answer is No, proceed to Question #10.


8.  Do you award Plaintiff punitive damages against the Defendant on Plaintiff's claim for battery?

Yes ___                          No ___

[Signatures]                     [Signatures]

If your answer is Yes, proceed to Question #9.
If your answer is No, proceed to Question #10.


9.  State the amount of punitive damages you award the Plaintiff against the Defendant on Plaintiff's claim for battery.

Amount $ _____.

[Signatures]

10.  Did the Defendant place the Plaintiff under reasonable apprehension of imminent harmful or offensive bodily contact either just before or during their altercation?

Yes ___                              No ___

[Signatures]                         [Signatures]

If your answer is Yes, proceed to Question #11.
If your answer is No, you must now answer No to Question #12 and then proceed no further on this Verdict Form.


11.  Had the Plaintiff placed the Defendant under reasonable apprehension of imminent physical attack when the Defendant placed the Plaintiff under his apprehension of bodily contact?

Yes ___                              No ___

[Signatures]                         [Signatures]

If your answer is Yes, you must now answer No to Question #12 and then proceed no further on this Verdict Form.
If your answer is No, you must now answer Yes to Question #12 and then proceed to Question #13.


12. Do you find for the Plaintiff on his claim for assault?

Yes ___                              No ___

[Signatures]                         [Signatures]


13. Did the Plaintiff suffer any harm as a direct result of the Defendant's assault?

Yes ___                              No ___

[Signatures]                         [Signatures]


14. Do you find that the Plaintiff should receive any compensatory or nominal damages for the Defendant's assault?

Yes ___                              No ___

[Signatures]                              [Signatures]

If your answer is Yes, proceed to Question #15.
If your answer is No, answer 0 to Question # 15 and then proceed to Question #16.

15. State the amount of compensatory or nominal damages that you award to Plaintiff on his claim for assault.

Amount $ _____.

[Signatures]

16. Did the Defendant engage in malicious wrongdoing, or morally culpable conduct or reckless or wilful conduct in committing his assault?

Yes ___                              No ___

[Signatures]                              [Signatures]

If your answer is Yes, proceed to Question # 17.
If your answer is No, proceed no further on this Verdict Form,

17. Do you find that the Plaintiff should be awarded punitive damages against the Defendant on Plaintiff's claim for assault?

Yes ___                              No ___

If your answer is Yes, proceed to Question # 18.
If your answer is No, proceed no further on this Verdict Form.

18.  State the amount of punitive damages you award to the Plaintiff against the Defendant on Plaintiff's claim for assault.

Amount $ _____

[Signatures]

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x

SPENCER D. DREIER,

     Plaintiff,

     v.

BEN CLORITE,

     Defendant.

--------------------------------------------------------x

09 Civ. 7553 (JGK)

**PLAINTIFF'S PROPOSED JURY INSTRUCTION #4**

**DEFENDANT'S COUNTERCLAIM FOR ASSAULT**

I will now instruct you on Defendant's counterclaim for assault.

The Defendant has brought his own claim for assault arising out of the same altercation in their dormitory room on January 27, 2009, which gives rise to the Plaintiff's claims for assault and battery.  The Defendant, Mr. Clorite, charges that the Plaintiff, Mr. Dreier, placed him in reasonable apprehension of imminent bodily contact of a harmful or offensive nature when Mr. Dreier entered their room.  He asserts that Mr. Dreier created this apprehension by barging into the room and then standing over him and shouting obscenities at him.

Mr. Dreier denies this.  He says that he entered the room with a key and expressed his annoyance at Mr. Clorite for having locked him out of the room by calling him a "dipshit," but he says that he did not shout at him and did not engage in any threatening physical conduct.

As I previously instructed you, in order to prevail on a claim of assault, one must show, by a preponderance of the evidence, that an individual has intentionally placed him in reasonable apprehension of imminent harmful or offensive bodily contact.  The apprehension must be created through some physical action by the individual charged with the assault.  Verbal threats or name calling alone do not suffice to raise the reasonable apprehension that is necessary.

Accordingly, in order to find for Mr. Clorite on his counterclaim for assault, you must find that he has proven, by a preponderance of the evidence, that Mr. Dreier placed him in reasonable apprehension of imminent bodily contact of a harmful or offensive nature and that Mr. Dreier did so by some threatening physical behavior rather than merely vocal behavior.   If you do not find that Mr. Clorite has proven that by a preponderance of the evidence, you must reject his counterclaim for assault and award him no damages.

In the event you find that Mr. Clorite has proven his claim by a preponderance of the evidence, you must then determine whether or not to award him damages.  You may award him compensatory damages if you find that he suffered some harm as a direct result of Mr. Dreier's assault.  If so, your damages should be in an amount reasonably calculated to compensate him for that harm.

That concludes my instruction on Mr. Clorite's counterclaim for assault.   As with the other claims we have discussed, I am going to provide you with a written verdict form for

this claim.  It will require that you answer a series of questions relating to the instructions I just gave you, and you will decide this claim by answering those questions.

**Authorities for Jury Instruction #4**

1. Elements of Assault Claim:

   Girden v. Sandals International, 262 F.3d 195, 203 (2d Cir. 2001); Cohen v. Davis, 926 F. Supp. 399 (SDNY 1996) (Koeltl, J.).

2. Apprehension Must Be Reasonable/Must be based on physical menacing conduct, not just words:

   Farash v. Continental Airlines, Inc., 574 F.Supp. 2d 356, 358 (S.D.N.Y. 2008); Collom v. Freeport, 691 F.Supp. 637, 641 (EDNY 1989); Fugazy v. Corbetta, 34 A.D. 3d 728, 729, 825 NYS 2d 120, 122 (2nd Dep't 2006); Rafter v. Bank of America, 2009 US Dist LEXIS 215542 (SDNY 2009); Carroll v. New York Property Inc. Underwriting Assoc., 88 A.D.2d 527, 450 NYS 2d 21, 22 (1st Dep't ), appeal dismissed, 57 NY 2d 602 (1982).

3. Elements of Justification Defense:

   Merzon v. County of Suffolk, 767 F.Supp. 432, 448 (E.D.N.Y. 1991); Van Vooren v. Cook, 75 N.Y.S.2d 362, 366 (App. Div. 1947).

4. Avalialbility of Punitive Damages:

   Action S.A. v. Marc Rich & Co., Inc., 951 F.2d 504, 509 (2d Cir. 1991); Whitney v. Citibank, N.A., 782 F.2d 1106, 1118 (2d Cir. 1985); Cohen v. Davis, 926 F. Supp. 399, 405 (S.D.N.Y. 1996) (Koeltl, J.); Commerce & Ind. Ins. Co. v. US Bank Nat'l. Asoc, 2008 US Dist LEXIS 67768 (Sept. 3, 2008) (Koeltl, J.); Walker v. Sheldon, 10 N.Y.2d 401, 404-05, 223 N.Y.S. 2d 488, 490-91, 179 N.E.2d 497 (1961); Roy Export Co. Est. of Valdez v. Columbia Broadcasting System, Inc., 672 F.2d 1095, 1106 (2d Cir), cert. denied, 459 U.S. 826 (1982).

**Special Verdict Form for Defendant's Counterclaim for Assault**

At least ___ jurors must agree on each answer.

1.  Did the Plaintiff place the Defendant under reasonable apprehension of imminent harmful or offensive bodily contact before the Defendant made contact with the Plaintiff?

Yes ___                              No ___

[Signatures]                    [Signatures]

If your answer is Yes, you must now answer Yes to Question # 2.

If your answer is No, you must now answer No to Question #2 and then proceed no further on this Verdict Form.

2.  Do you find for the Defendant on his counterclaim for assault?

Yes ___                              No ___

[Signatures]                    [Signatures]

3.  Did the Defendant suffer harm as a direct result of the Plaintiff's assault?

Yes ___                              No ___

[Signatures]                    [Signatures]

If your answer is Yes, proceed to Question #4.

If your answer is No, you must answer No to Question #4 and then proceed to Question #6.

4. Do you find that the Defendant should receive any compensatory damages for the Plaintiff's assault?

Yes ___                              No ___

[Signatures]                    [Signatures]

If your answer is Yes, proceed to Question #5 and then proceed no further with this Verdict Form.

If your answer is No, answer 0 to Question #5 and then proceed to Question #6.

5.  State the amount of compensatory damages that you award to the Defendant on his counterclaim for assault.

Amount $ _____

[Signatures]

6.  Do you find that the Defendant should receive any nominal damages?

Yes ___                              No ___

[Signatures]                         [Signatures]

If your answer is Yes, proceed to Question #7.

If your answer is No, proceed no further with this Verdict Form.

7.  State the amount of nominal damages that you award to the Defendant on his counterclaim for assault.

Amount  $ _____

[Signatures]

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

SPENCER D. DREIER,

        Plaintiff,

       v.

BEN CLORITE,

       Defendant.

-------------------------------------------------------x

09 Civ. 7553 (JGK)

**PLAINTIFF'S PROPOSED JURY INSTRUCTION #5**

**PLAINTIFF'S CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

     The final claim is Plaintiff's claim for intentional infliction of emotional distress.  I will instruct you as to that claim now.

     The plaintiff, Mr. Dreier, claims that for a period of about six month, commencing with his arrival at Union College in early September, 2008, the Defendant, Mr. Clorite, subjected him to sustained harassment and abuse in a variety of forms. He claims that this abuse included physical confrontations, ridicule in front of other students, locking him out of their room, interference with his sleep and varioius other acts of hostility.  He claims that the abuse then worsened in January, 2009, after the arrest of Mr. Dreier's father, when, according to Mr. Dreier, Mr. Clorite repeatedly taunted him in explicit terms about his father's arrest, despite the fact, or, according to Mr. Dreier, because of the fact , that Mr. Clorite knew Mr. Dreier was in a very vulnerable emotional state at the time.   He claims that the harassment then culminated on January 27, 2009, when Mr. Clorite attacked him in their room in the altercation I have previously addressed with you and then posted on the internet the statement about Mr. Dreier which I have previously addressed with you.  Mr.

Dreier claims that the harassment then still continued with a campaign by Mr. Clorite to have Mr. Dreier evicted from the dormitory and with Mr. Clorite's continued visits to Mr. Dreier's room after being instructed by school authorities to stay away.

Mr. Dreier claims that by reason of the foregoing, Mr. Clorite created and subjected him to a highly hostile, threatening, and suspicious environment at his college, which caused Mr. Dreier extreme emotional distress and forced him to withdraw from Union College.  He claims that Mr. Clorite intended to cause him this distress with the objective of forcing his withdrawal.

Mr. Clorite denies all of this. He contends that Mr. Dreier was constantly disagreeable and created intolerable living conditions as a roommate.  He says that Mr. Dreier interfered with Mr. Clorite's sleep and privacy.  He contends that he and his other suitemates attempted to work through their problems with Mr. Dreier but that Mr. Dreier was unwilling and unreasonable and that the friction between him and Mr. Dreier was entirely Mr. Dreier's fault.  He contends that he did not intend to cause Mr. Dreier emotional distress.

Under New York law, which applies here, a plaintiff suing for intentional infliction of emotional distress must establish the following: (i) that the defendant engaged in extreme and outrageous conduct; (ii) that the defendant had the intent to cause the plaintiff severe emotional distress or acted with reckless disregard of a substantial probability of causing severe emotional distress; (iii) that the plaintiff did in fact suffer severe emotional distress;

and (iv) that there was a causal connection between the defendant's conduct and the plaintiff's severe emotional distress.

In order to find in favor of Mr. Dreier on this claim, you will have to find that he has proven each of these four elements of the claim by a preponderance of the evidence. If he fails to do so with respect to any of these four elements, you must find for Mr.Clorite on this claim. I will now further explain each of these elements.

First, to find that the Defendant engaged in extreme and outrageous conduct, you must find, by a preponderance of the evidence, that his conduct went beyond all reasonable bounds of decency and was so atrocious as to be utterly intolerable in our society. It must involve more than just insults or threats. You cannot find for the Plaintiff on this claim based only on a defamatory statement, regardless of how harshly you judge that statement. Nor can you base liability solely on a single physical altercation. However, you can find liablity if you find that these actions were part of a larger course of abusive conduct by the Defendant which was extreme and outrageous as I've defined that.

Secondly, to find that the Defendant acted with intent, you must find, by a preponderance of the evidence, that his objective was to cause the Plaintiff extreme emotional distress or that he acted with reckless disregard of a substantial probability that his actions would cause the Plaintiff severe emotional distress. If a person acts voluntarily with a desire to bring about a result, the person is said to have intended that result. Even if the person has no specific desire to bring about the result, if the person engages in his

conduct knowing that there is a substantial probability that the result will follow, the person is said to have intended that result. Where a defendant may have acted to achieve some purpose other than causing the plaintiff severe emotional distress, the plaintiff must show that the defendant also had a desire to cause the plaintiff severe emotional distress which was more than incidental to his motivation.

Third, to find that the plaintiff in fact suffered severe emotional distress, you must find, by a preponderance of the evidence, that the plaintiff's suffering was genuine and extreme. It must be more than ordinary stress. It must be severe.

Finally, if you find that the plaintiff did suffer severe emotional distress, you must find, by a preponderance of the evidence, that he has proven a causal connection between the plaintiff's conduct and his distress. This means that the distress must be directly attributable to what the defendant did.

If you find that Mr. Dreier has proven all four elements of the claim by a preponderance of the evidence, then you must determine what amount of damages, if any, he should be awarded as compensation for his harm. As I've previously stated, the amount of damages may not be ascertainable by any mathematical calculation or with any degree of certainty, but it should reflect what you believe is fair and reasonable compensation for the harm. You may decide that that is a small amount or a larger amount, depending on your assessment of the harm. Or you may decide to award only nominal damages, in the amount of a dollar or some such nominal amount, if you determine that there was no injury

warranting any actual compensation.  By this instruction, I do not imply what amount of damages, if any, you may find fair and reasonable.  You are instructed, however, that in determining the compensatory damages, you are to take into account only the harm suffered by the Plaintiff; you are not to take into account the Defendant's ability to pay or his age or other personal circumstances of the Defendant.

In the event you find the Defendant liable on this claim, you must then also consider Mr. Dreier's request for punitive damages.  As I instructed you previously, you can award punitive damages if you find, by a preponderance of the evidence, that the Defendant acted with malice or engaged in morally culpable conduct or was so reckless or wilful that punitive damages would serve the purpose of detering him or others from such conduct in the future.  Any amount you award should take into account most heavily the level of reprehensibility of the Defendant's conduct.  You should also take into account how the amount compares to the harm that Plaintiff has suffered.  And, in considering punitive damages, unlike compensatory damages, you may also take into account the Defendant's financial wherewithal and and how much is needed to effectively discourage the Defendant from repeating such conduct and others from engaging in such conduct.

As with the other claims we have discussed, I shall provide you with a written Verdict Form for the Plaintiff's claim for intentional infliction of emotional distress, which will require you to answer a series of questions relating to the instructions I have just given you and will enable you to decide this claim by answering those questions.

**Authorities for Jury Instruction #5**

1. Elements of the claim:

    Convoy v. AT&T Corp., 241 F.3d 242, 258 (2d Cir. 2001); Bender v. City of New York, 78 F.3d 787, 790 (2d Cir. 1996); Stuto v. Fleishman, 164 F.3d 820, 827 (2d Cir. 1999); Howell v. New York Post Co., Inc., 81 NY 2d 115, 596 NYS 2d 350, 612 NE 2d 699.

2. Need for outrageous, extreme conduct beyond all bounds of decency:

    Murphy v.American Home Products Corp., 448 N.E.2d 86, 90 (NY 1983); Fischer v. Maloney, 43 NY 2d 553, 557, 402 NYS 2d 991, 373 NE 2d 1215; Restatement of Torts, Second, sec. 46, subd. 1.

3. Intent/ Recklessness Suffices:

    Murphy v. American Home Products Corp. 448 NE 2d 86 (NY 1983); Mulbery Street Corp. v. Columbia University, 4 AD 3d 49, 771 NYS 2d 16, Restatement Torts, Second sec. 46, cmt. 1;  Murphy v. Murphy, 109 AD 2d 965, 486 NYS 2d 457.

4. Intent satisfied where desire to cause distress is more than incidental to defendant's motive:

    O'Rourke v. Pawling Sav. Bank, 80 AD 2d 847, 444 NYS 2d 471.

5. No liability merely for single libel:

    Sweeney v. Prisoners' Legal Services of New York, Inc., 538 N.Y.S.2d 370, 374 (App.Div. 1989); Bemet v. NYP Holdings, Inc., 307 AD 2d 86, 760 NYS 2d 133.

6. Liability for Continuing Harrassment:

    Scott v. Rosenthal, No. 97 Civ. 2143, 2000 WL 1863542 at *8 (S.D.N.Y. Dec. 20, 2000); Seltzer v. Bayer, 272 A.D. 2d 263, 709 N.Y.S.2d 21, 23 (1st Dep't 2000); Nader v. General Motors Corp., 25 N.Y.2d 560, 370 N.Y.S. 2d 647, 654, 255 N.E. 2d 765 (NY 1970); Shannon v. Metro- North Railroad, 704 N.Y.S.2d 208, 209 (1st Dep't 2000); Klinge v. Ithaca College, 167 Misc. 2d 458, 634 N.Y.S. 2d 1000 (Sup. Ct. Tom. Co.1995) (pattern oif harassment including defamation).

7. Distress must be severe/ Severity issue for jury:

    Christenson v. Gotman, 249 AD 2d 805, 671 NYS 2d 835.

8. Availability of punitive damages:

Action S.A. v. Marc Rish & Co., Inc., 951 F.2d 504, 509 (2d Cir. 1991); Whitney v. Citibank, N.A., 782 F.2d 1106, 1118 (2d Cir. 1985); Cohen v. Davis, 926 F.Supp. 399, 405 (S.D.N.Y. (Koeltl, J.); Walker v. Sheldon, 10 N.Y.2d 401, 404-05, 223 N.Y.S.2d 488, 490-91, 179 N.E.2d 497 (1961); Roy Export Co. Est. of Valdez v. Columbia Broadcasting System, Inc.,672 F.2d1095, 1106 (2d Cir.),cert. denied, 459 U.S. 826 (1982).

**Special Verdict Form for Plaintiff's Claim for Intentional Infliction of Emotional Distress**

At least ___ jurors must agree on each answer.


1.  Did the Defendant engage in extreme and outrageous conduct directed at the Plaintiff?

Yes ___                              No ___

[Signatures]                    [Signatures]

If your answer is Yes, proceed to Question #2.
If your answer is No, you must now answer No to Question #5 and then proceed no further with this Verdict Form.


2.  Did the Defendant intend to cause the Plaintiff severe emotional distress or act with reckless disregard of a substantial probability that he would cause the Plaintiff severe emotional distress?

Yes ___                              No ___

[Signatures]                    [Signatures]

If your answer is Yes, proceed to Question #3.
If your answer is No, you must now answer No to Question #5 and then proceed no further with this Verdict Form.


3.  Did the Plaintiff suffer severe emotional distress?

Yes ___                              No ___

[Signatures]                    [Signatures]

If your answer is Yes, proceed to Question #4.
If your answer is No, you must now answer No to Question #5 and then proceed no further with this Verdict Form.


4.  Was there a causal connection between the Defendant's conduct and the Plaintiff's severe emotional distress?

Yes ___                              No ___

[Signatures]                    [Signatures]

If your answer is Yes, you must now answer Yes to Question #5 and then proceed to Question #6.

If your answer is No, you must now answer No to Question # 5 and then proceed no further with this Verdict Form.


5.  Do you find for the Plaintiff on his claim for intentional infliction of emotional distress?

If your answer to Question #1, #2, #3 and #4 was Yes, you must answer this Question Yes and then proceed to Question #6.

If your answer to Question #1, #2, #3 or #4 was No, you must answer this Question No and then proceed no further with this Verdict Form.

Yes ___                    No ___

[Signatures]                    [Signatures]


6.  Do you find that the Plaintiff should receive any compensatory or nominal damages for the Defendant's intentional infliction of emotional distress?

Yes ___                    No ___

[Signatures]                    [Signatures]

If your answer is Yes, proceed to Question #7.
If your answer is No, proceed to Question #8.


7.  State the amount of compensatory or nominal damages that you award to the Plaintiff on this claim?

Amount $ _____

[Signatures]


8.  Did the Defendant engage in malicious wrongdoing, or morally culpable conduct or reckless or wilful conduct in committing his intentional infliction of emotional distress?

Yes ___                    No ___

[Signatures]                    [Signatures]

If your answer is Yes, proceed to Question #9.
If your answer is No, proceed no further on this Verdict Form.


9.  Do you find that the Plaintiff should be awarded punitive damages against the Defendant on Plaintiff's claim for intentional infliction of emotional distress?

    Yes ___                   No ___

    [Signatures]              [Signatures]

If your answer is Yes, proceed to Question #10.
If your answer is No, proceed no further on this Verdict Form.


10. State the amount of punitive damages you award to the Plaintiff against the Defendant on Plaintiff's claim for intentional infliction of emotional distress.

    Amount $ _____

    [Signatures]

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x

      SPENCER D. DREIER,

            Plaintiff,

            v.

      BEN CLORITE,

            Defendant.

------------------------------------------------------x

                                         09 Civ. 7553 (JGK) (MHD)

**PLAINTIFF'S PROPOSED VOIR DIRE**

                                    SPENCER DREIER

                                    Plaintiff Pro Se
                                    425 East 58th Street
                                    New York, NY  10022
                                    (917) 841-9571

1.  The parties to this action are Spencer Dreier and Ben Clorite.  Do you know or have you ever heard of either of these individuals?

2.  This case arises from the time that the parties were students at Union College in Schenectady, New York.  Have you or a family member or friend attended that college?

3.  The following individuals may be called as witnesses in this case:  Catherine Derby, David Rosante, Owen Miller, Chris Rush, Dan Bachelette, Alan Gerard, Gerald Shargel, Jonathan Streeter, Patricia Williams, Elisa Dreier, Brooke Donnelly and Susan Wong.  Do you know, or have you ever heard of, any of those individuals?

4.  This case also relates to a criminal proceeding involving the plaintiff's father, Marc Dreier, who was an attorney here in New York.  Do you know or have you ever heard of him or his law firm?

5.  Have you or anyone in your family had any employment experience in the United States Attorney's Office?

6.  This case involves claims for libel and slander.  Have you or anyone in your family or any close friend ever been involved in any litigation involving libel or slander?

7.  Have you ever posted a statement on a blog site or made a statement in the media that was critical of someone?
To the best of your knowledge has any family member or any close friend ever done so?

8.  This case also involves claims for assault and battery.  Have you or anyone in your family ever been involved in any case or incident involving assault or battery?

9.  Have you ever been accused of assauting anyone?  To the best of your knowledge has any member of your family or any close friend ever been accused of assaulting someone?

10.  This case also involves a claim for intentional infliction of emotional distress.  Have you or anyone in your family ever been involved in any case involving such a claim?

11.  In this case you may see certain newspaper accounts of actions attributed to one of the parties.  Do you have any doubt that you can and will assess for yourself the facts in this case based on the evidence you will see and hear without regard to the conclusions stated in any newspaper accounts?

12.  In this case you may hear about certain criminal acts by the plaintiff's father.  Do you have any doubt that you can and will assess the facts in this case without any presumptions about the plaintiff based on the activities of his father?

13. This case involves the conduct of both parties while they were 18 years old.  In determining their possible liability you are not to forgive either of them by reason of their

age.  Do you have any doubt that you can and will assess the libility of each of the parties without any forgiveness by reason of their age?

14.  Each of the parties is now 22 years old.  In determining their possible obligation to pay compensatory damages, you are not to take into account their age or your perception of their ability to pay.  Do you have any doubt that you can and will determine the compensatory damages to which either party may be entitled without forgiveness by reason of their age or apparent financial means?

15.  The plaintiff here is representing himself without an attorney.  The defendant is represented by counsel.  Do you have any doubt that you are prepared to give each of them your full attention in presenting their cases?

June 18, 2012

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Spencer D. Dreier

_____

*(In the space above enter the full name(s) of the plaintiff(s)/petitioner(s).)*

- against -

Ben Clorite

_____

_____

_____

*(In the space above enter the full name(s) of the defendant(s)/respondent(s).)*

09 Civ. 7553 (JGK) (MHD)

**AFFIRMATION OF SERVICE**

I, Jenny Held , declare under penalty of perjury that I have
          *(name)*

served a copy of the attached (i) Motions In Limine, (ii) Voir Dire, (iii) Jury Instructions
                                         *(document you are serving)*

upon Jerome, Coleman, Esq whose address is _____
          *(name of person served)*

521 Fifth Anvenue, New York, NY 10175 (Putney Twombly)
                              *(where you served document)*

by mail
      *(how you served document: For example - personal delivery, mail, overnight express, etc.)*

Dated: New York , NY
          *(town/city)*   *(state)*

June 18 , 2012
*(month)* *(day)* *(year)*

Jennifer Held
*Signature*

900 Third Ave
*Address*

NY, NY
*City, State*

10022
*Zip Code*

212-557-5558
*Telephone Number*

*Rev. 05/2010*